# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAF-LAND, L.L.C. | * | CIVIL ACTION NO. 15-CV-588 |
| | * | |
| VERSUS | * | JUDGE JAMES J. BRADY |
| | * | |
| SUNBELT CHEMICALS CORP. and | * | MAG. JUDGE ERIN WILDER- |
| AIG SPECIALTY INSURANCE COM- | * | DOOMES |
| PANY | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL</u>

Harold J. Flanagan (#24091)
Sean P. Brady (#30410)
Andy J. Dupre (#32437)
Anders F. Holmgren (#34597)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Suite 2405
New Orleans, Louisiana 70170
Telephone:  (504) 569-0235
Facsimile:  (504) 592-0251

Attorneys for Sunbelt Chemicals Corp.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. ii

I.    INTRODUCTION ................................................................................................................. 1

II.   REPLY ARGUMENT ........................................................................................................... 1

      A.    Whether Wells Fargo received notice of the claim and served as ASIC's
            agent are both disputed. ........................................................................................... 1

      B.    ASIC's claims of burden are exaggerated; Sunbelt's discovery is targeted
            to the issues raised. ................................................................................................... 3

III.  CONCLUSION ..................................................................................................................... 5

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Spurrell v. Ivey*,
    Nos. 25359–CA, 25360–CA (La. App. 2d Cir. 1/25/94), 630 So. 2d 1378.................................. 2

Defendant Sunbelt Chemicals Corp. provides this reply memorandum in further support of its motion to compel complete discovery responses from its insurer and co-defendant, AIG Specialty Insurance Company ("ASIC").

## I.   INTRODUCTION

ASIC's opposition rests principally on two mistaken contentions. It is hotly disputed whether (1) Wells Fargo Insurance Services USA, Inc. received notification of plaintiff, Shaf-Land, LLC's claim against Sunbelt and (2) Wells Fargo served as ASIC's agent for receipt of notice of claims. Sunbelt's representative testified last week that he timely spoke with a Wells Fargo representative about the claim. And there is significant evidence that, at the very least, ASIC manifested Wells Fargo's authority to receive claims on its behalf.

ASIC's burden arguments are exaggerated and unsupported. Sunbelt seeks, and ASIC refuses to provide, basic discovery about the relationship between Wells Fargo and ASIC—the principal coverage issue here. Sunbelt also seeks discovery about how notice was provided on its previous claims, relevant to Sunbelt's understanding of how notice could be provided of *this* claim. Sunbelt seeks discovery about whether ASIC has accepted notice on claims-made-and-reported policies like Sunbelt's in specified ways. That could be avoided if ASIC were willing to stipulate to certain facts, as discussed below. But if not, the discovery is necessary. ASIC has not met its burden of demonstrating that responding to it would be overly burdensome.

## II.   REPLY ARGUMENT

### A.   Whether Wells Fargo received notice of the claim and served as ASIC's agent are both disputed.

ASIC argues there is no evidence that Wells Fargo received notice of the claim and that it is undisputed that Wells Fargo does not act on ASIC's behalf with regard to claim notification.

These sweeping assertions are simply incorrect.

Sunbelt's corporate representative, Tim Capp, testified last week that he personally spoke with a representative of Wells Fargo (Matt Puckett) about the claim in May 2015.[1] That notice fell within the time period for reporting claims under ASIC's policy.[2] Shaf-Land's counsel sent written notice of the claim to Wells Fargo, via the Commissioner of Insurance, on May 5, 2015.[3] Sunbelt has an outstanding public records request to the Commissioner seeking evidence that his department forwarded that notice to Wells Fargo.[4]

Whether Wells Fargo served as agent for ASIC for receipt of claims is also disputed. That agency can be established in at least two ways. ASIC could have specifically designated Wells Fargo as its agent for that purpose. Alternatively, Wells Fargo could be vested with apparent authority to receive notice on behalf of ASIC—*i.e.*, that ASIC manifested Wells Fargo's authority to receive notice of claims and Sunbelt reasonably relied on that manifestation.[5] The evidence supports such a finding here. Wells Fargo was the "face" of the insurance industry for Sunbelt—Sunbelt was not allowed to interact with ASIC directly when coverage was placed.[6] Wells Fargo sold Sunbelt only

---

[1]    We have not yet received the representative's deposition transcript, but will supplement this memorandum with it when it is received.

[2]    Sunbelt first learned of the claim on March 3, 2015, within 60 days of the end of ASIC's 2014-2015 policy period on May 1, 2015. Because the policy was renewed, Sunbelt had until 60 days after the expiration of the policy period (until June 30, 2015) to report the claim. *See* ASIC 2014-2015 Policy, page labeled ASIC POL 0000039, attached as Exhibit A.

[3]    Exhibit B.

[4]    Exhibit C.

[5]    *See Spurrell v. Ivey*, Nos. 25359–CA, 25360–CA (La. App. 2d Cir. 1/25/94), 630 So. 2d 1378, 1385-87.

[6]    Wells Fargo 30(b)(6) deposition, attached as Exhibit D, p. 67.

AIG-group policies for 7 years.[7] Wells Fargo was compensated by ASIC directly.[8] And numerous instances, Sunbelt reported claims to Wells Fargo that AIG ultimately covered.[9]

In response ASIC offers only: (1) the objected-to testimony of Wells Fargo's non-lawyer 30(b)(6) representative,[10] (2) the conclusory affidavit of an ASIC in-house lawyer (which could well be contradicted by the documents ASIC refuses to provide), and (3) an interrogatory response from Sunbelt stating that Wells Fargo was Sunbelt's "agent."[11] That evidence is not sufficient to shut down discovery on this issue. At the very least, there are genuine issues of material fact that demand further discovery.

### B.    ASIC's claims of burden are exaggerated; Sunbelt's discovery is targeted to the issues raised.

**Discovery regarding Wells Fargo's relationship with ASIC:**  This discovery goes to the heart of the case. ASIC suggests it has substantively responded to Sunbelt's Interrogatory No. 1.[12] It has not; the response simply says Wells Fargo was a surplus lines producer and references Sunbelt's interrogatory response that Wells Fargo was its "agent."[13] ASIC must actually answer the question—what is Wells Fargo authorized to do on ASIC's behalf? The answer isn't nothing—at the very least, Wells Fargo is authorized to sell ASIC's policies to insureds like Sunbelt. ASIC

---

[7]     *Id.*, pp. 94-96.

[8]     *Id.*, pp. 135-37.

[9]     *Id.*, pp. 140-50.

[10]     *See id.*, pp. 86-87.

[11]     ASIC has apparently ignored the possibility that Wells Fargo could serve as Sunbelt's agent for some purposes and ASIC's for others. Or that Sunbelt might have reasonably believed that Wells Fargo was ASIC's representative.

[12]     ASIC Mem. in Oppo. (Rec. Doc. 48-2), p. 8.

[13]     Exhibit E, Response to Interrogatory No. 1.

should also respond to Request for Production No. 1, which seeks all documents that govern, evidence, comprise, or discuss its relationship with Wells Fargo.

**Discovery regarding Sunbelt's claims history:**  Sunbelt seeks the documents showing how notice of its previous claims was provided to ASIC.[14] Wells Fargo's production and deposition have already shown that Sunbelt reported claims to Wells Fargo, and that those claims were covered by ASIC. ASIC's documents should confirm that, not only were these claims covered, there was never a question of whether notice was proper. This is a finite group of documents is relevant to the agency questions, and it should be produced.[15]

**Discovery regarding how ASIC receives notice of claims:** Sunbelt's requests for admissions 1-5, interrogatories 2-6, and request for production 5 seek information and documents regarding how ASIC has received claims on claims-made-and-reported policies. That discovery is designed to defend against an argument by ASIC that notice must be received through written notice, directly from Sunbelt, to the person specified in the policy. But it could be avoided if ASIC—as its opposition suggests—were willing to (1) to forego any argument that "notice must be received through written notice 'by Sunbelt itself'"[16] and (2) stipulate that if Wells Fargo received notice of the claim (either orally or in writing) and Wells Fargo is found to be ASIC's agent for receipt of claims, there was proper notice under the ASIC policy. Otherwise, the discovery is necessary.

The burden to ASIC is minimal and, in any event, has not been substantiated. The requests

---

[14]     Exhibit E, Request for Production No. 7.

[15]     The Court will not find a request that ASIC produce "years' worth of underwriting files and years' worth of claims files regarding policies and claims not at issue in this lawsuit." ASIC Mem. in Oppo. (Rec. Doc. 48-2), p. 10.

[16]     ASIC Mem. in Oppo. (Rec. Doc. 48-2), p. 8.

for admission require ASIC to admit or deny whether it received notice on claims-made and-re-ported policies in certain ways (by a plaintiff, through Wells Fargo, orally, etc.) during the last five years. ASIC need only search until it finds one of those instances, in which case it must admit the request.

The interrogatories and requests for production do seek limited information—the policy language and the method of receiving notice—about each instance in which ASIC accepted notice in a specified way.[17] ASIC has not shown that responding to these requests would be overly bur-densome. It notes the requests involve a lot of claims, but makes no mention of whether those claims files can be electronically searched and the effort involved in doing so. One would imagine that ASIC (whose parent, AIG, is one of the largest insurance groups in the United States) has some system to retrieve information from its many claims files. In the absence of any evidence to the contrary, ASIC must respond.

## III.   CONCLUSION

For the reasons set forth herein, and in Sunbelt's original memorandum in support, its mo-tion to compel should be granted.

---

[17]   The interrogatories also sought the name of the insured involved and the names of the ASIC per-sonnel involved in handling the claim. For expedience, ASIC need not provide that information. We note, however, that the parties have agreed to a protective order to preserve the privacy of any such information provided in discovery in this litigation.

Respectfully submitted,

/s/ Sean P. Brady
Harold J. Flanagan (#24091)
Sean P. Brady (#30410)
Andy J. Dupre (#32437)
Anders F. Holmgren (#34597)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Suite 2405
New Orleans, Louisiana 70170
Telephone:  (504) 569-0235
Facsimile:  (504) 592-0251

Attorneys for Sunbelt Chemicals Corp.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record this 18th day of November, 2016, by e-filing it into the CM/ECF system, which will automatically deliver a copy to all counsel.

/s/ Sean P. Brady