# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

SHAF-LAND, L.L.C.                                               CIVIL ACTION

VERSUS                                                         NO. 15-588-JJB-EWD

SUNBELT CHEMICALS CORP., ET AL.

## RULING AND ORDER ON MOTION TO COMPEL

Before the Court is a Motion to Compel ASIC's Discovery Responses (the "Motion"), filed by defendant Sunbelt Chemicals Corp. ("Sunbelt").[1]  The Motion is opposed[2] and Sunbelt has filed a Reply.[3]  For the reasons that follow, the Motion is **GRANTED in part.[4]**

## I.       Background

This matter arises out of a dispute relating to alleged damage to commercial property owned by Shaf-Land, L.L.C. ("Shaf-Land") and leased to Sunbelt.  On or about July 30, 2015, Shaf-Land filed a Petition for Damages and Breach of Contract against Sunbelt and its insurer, AIG Specialty Insurance Company ("ASIC"), in the 18th Judicial District Court for the Parish of West Baton Rouge, Louisiana, asserting that Sunbelt's business operations caused excessive

---

[1] R. Doc. 44.

[2] R. Doc. 45.

[3] R. Doc. 58.  ASIC has also filed a Sur-Reply Memorandum in Opposition to Sunbelt's Motion to Compel (R. Doc. 67), and Sunbelt has filed a Supplemental Memorandum in Support of Motion to Compel (R. Doc. 68).

[4] Magistrate judges may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). "A motion to compel is a nondispositive, pretrial discovery motion."  *State Farm Mut. Auto. Ins. Co. v. Friedman*, 2002 WL 649417, at *1 (N.D. Tex. Jan. 14, 2002) (citing *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995)).  *See*, *Turner v. Hayden*, 2016 WL 6993864, at *1 (W.D. La. Nov. 29, 2016) ("The decision by Magistrate Hornsby to deny Turner's Motion to Compel Discovery is a non-dispositive matter."); *U.S. v. Toney*, 2012 WL 2952768, at *1 (W.D. La. July 19, 2012) ("The Court must apply a 'clearly erroneous' or 'contrary to law' standard of review to a magistrate judge's ruling on a nondispositive pre-trial motion, such as a motion to compel." (citations omitted)); *In re Bumper Exchange, Inc*., 333 B.R. 135, 138 (Bankr. W.D. Tex. 2005) (holding bankruptcy court's order granting motion to compel discovery was an interlocutory order as the order concerned a nondispositive discovery issue and did not dispose of the merits of litigation).

damages to the property.[5]  The matter was removed to this Court on March 9, 2016, on the basis

of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[6]

On May 10, 2016, ASIC filed a Motion for Summary Judgment, asserting that no coverage

is available under the ASIC policy issued to Sunbelt because Sunbelt failed to provide proper

notice of a claim for property damage.[7]  ASIC claimed that Shaf-Land first made a demand against

Sunbelt for property damage and/or clean-up costs on or about March 3, 2015, but that Sunbelt did

not advise ASIC of the claim in writing.[8]  ASIC asserted that it first received notice of Shaf-Land's

claims against Sunbelt when ASIC was served with the lawsuit on or about August 4, 2015.[9]  After

obtaining an extension of time to file a response to the Motion for Summary Judgment,[10] Sunbelt

filed a Motion to Continue ASIC's Motion for Summary Judgment on June 27, 2016.[11]  In the

Motion to Continue, Sunbelt asserted that notice of the claim was timely provided by Shaf-Land

to Wells Fargo Insurance Services USA, Inc. ("Wells Fargo"), the "producer" of the ASIC policies

at issue.[12]  Thus, Sunbelt claimed there was a material factual dispute regarding whether Wells

Fargo is an agent of ASIC for the purpose of receiving notice of claims.[13]  Sunbelt asserted that a

continuance was necessary to allow for additional discovery regarding the relationship between

ASIC and Wells Fargo.[14]

---

[5] R. Doc. 1-2.
[6] R. Doc. 1 at ¶ 2.
[7] R. Doc. 17.
[8] R. Doc. 17-1 at 5 (*citing* R. Docs. 17-4 and 17-5).
[9] R. Doc. 17-1 at 5 (*citing* R. Doc. 17-5).
[10] *See*, R. Docs. 19 and 20.
[11] R. Doc. 23.
[12] R. Doc. 23-1 at 1.
[13] R. Doc. 23-1 at 1.
[14] The Court notes that Sunbelt propounded its First Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions, which are the subject of the instant Motion, upon ASIC by filing it with its Motion to Continue on June 27, 2016.  (R. Doc. 23-7).  The discovery requests seek information and documents regarding ASIC's relationship with Wells-Fargo and ASIC's claims-handling practices.  (*Id.*).

On June 28, 2016, District Judge James J. Brady issued an Order granting Sunbelt's Motion to Continue, dismissing ASIC's Motion for Summary Judgment and reserving ASIC's right to re-notice the motion "following discovery on the relevant issues."[15]

On October 24, 2016, Sunbelt filed the instant Motion, seeking to compel ASIC's discovery responses with respect to three topics: (1) ASIC's claims-handling history with respect to its other insureds; (2) ASIC's claims-handling history with respect to Sunbelt; and (3) ASIC's relationship with Wells Fargo.[16]  Although ASIC objected to the discovery requests as seeking irrelevant information and documents,[17] Sunbelt contends that information regarding how ASIC accepts notice of claims and whether notice to Wells Fargo constitutes notice to ASIC is relevant because it would show the extent to which ASIC's past claims-handling actions undermine its current position regarding whether it received timely notice of Shaf-Land's claims against Sunbelt.[18]  Sunbelt also asserts that by granting its Motion to Continue, Judge Brady implicitly recognized that the discovery it seeks is relevant to Sunbelt's coverage claim.[19]

With respect to the first category of discovery requests, Sunbelt asserts that it asked ASIC to admit whether in the last five years it had accepted notice of claims on claims-made-and-reported policies even when that notice was given (1) to ASIC by a producer, agent, or broker; (2) to ASIC by a party making a claim against the insured; (3) orally; (4) to Wells Fargo; or (5) to ASIC in a manner other than as specified in its policy,[20] and asked ASIC for additional information and documents related to any such admission.[21]  Although ASIC objected to the discovery requests

---

[15] R. Doc. 25.  Judge Brady also granted Shaf-Land's Expedited Motion for Extension of Time to File Opposition to ASIC's Motion for Summary Judgment With Incorporated Memorandum In Support.  (R. Docs. 22, 25).
[16] R. Doc. 44.
[17] R. Doc. 44-1 at 12 (*citing* R. Doc. 44-2 at 5-16).
[18] R. Doc. 44-1 at 12.
[19] R. Doc. 44-1 at 12.
[20] R. Doc. 44-1 at 9 (*citing* R. Doc. 44-2 at 5-9).
[21] R. Doc. 44-1 at 9 (*citing* R. Doc. 44-2 at 11-12, 15).

as seeking irrelevant information,[22] Sunbelt contends that the information is relevant to defend against ASIC's claim that the only way Sunbelt could have provided timely notice of Shaf-Land's demand is by written notice from Sunbelt.[23]  Sunbelt further asserts that the discovery requests are limited to a five-year period, the information sought is not privileged, and any concerns regarding confidentiality can be cured by the protective order currently in place.[24]  Sunbelt contends that ASIC's remaining boilerplate objections to these discovery requests are meritless.[25]

With respect to the second category of discovery requests, Sunbelt asserts that it asked ASIC to (1) describe how Sunbelt has given notice of claims that ASIC previously covered; (2) provide communications between ASIC and Wells Fargo relating to Sunbelt; (3) provide documents evidencing how Sunbelt provided notice of prior claims; and (4) produce ASIC's full underwriting file for both Sunbelt policies at issue.[26]  Sunbelt asserts that the way ASIC has accepted notice on past Sunbelt claims, especially if that notice was provided through Wells Fargo, is directly relevant to the question of whether ASIC received proper notice in this case.[27]  ASIC objected to these discovery requests, asserting that they seek information already in Sunbelt's possession, request irrelevant information, and are vague and ambiguous.[28]  Sunbelt asserts that these are boilerplate and invalid objections.

With respect to the third category of discovery requests, Sunbelt asserts that it asked ASIC to describe the relationship between ASIC and Wells Fargo and to produce documents and

---

[22] R. Doc. 44-2 at 5-12, 15).
[23] R. Doc. 44-1 at 13.
[24] R. Doc. 44-1 at 13 (*citing* R. Doc. 31).
[25] R. Doc. 44-1 at 14.
[26] R. Doc. 44-1 at 9 (*citing* R. Doc. 44-2 at 13, 14, 16).  Although Sunbelt refers to "both policies at issue," Request for Production No. 8, to which Sunbelt refers, only requests the underwriting file for ASIC Policy No. EG 4068312, which is the only policy mentioned in the discovery requests.  (R. Doc. 44-2 at 16; *See also*, R. Doc. 44-2 at 6-11, 13, 15).
[27] R. Doc. 44-1 at 16.
[28] R. Doc. 44-2 at 13, 14, 16).

communications regarding the relationship and regarding Wells Fargo's authority to act on ASIC's behalf.[29]  Sunbelt claims that ASIC should be compelled to respond to these requests because its objections do not justify its failure to provide full and complete responses.[30]  Sunbelt points out that ASIC objected to Interrogatory No. 1, which asked ASIC to describe the relationship between ASIC and Wells Fargo, as calling for a legal conclusion.[31]  Sunbelt argues this objection is unfounded because the interrogatory asks for a factual description of the relationship, not a legal conclusion.[32]  Sunbelt asserts that ASIC's remaining objections to the requests as being overly broad and vexatious are similarly unfounded because Judge Brady implicitly recognized the relevance and importance of discovery into the relationship between ASIC and Wells Fargo when he continued ASIC's Motion for Summary Judgment.[33]  Sunbelt contends that these discovery requests are tailored to obtain that information by asking for documents that evidence the relationship between ASIC and Wells Fargo and asserts that the request is not unduly burdensome merely because it may result in the production of a large number of documents.[34]

In the Opposition, ASIC asserts that the discovery sought by Sunbelt is not relevant in this case because there is no evidence to support Sunbelt's "baseless and false assertion" that notice of Shaf-Land's claim was timely provided to Wells Fargo and that Wells Fargo has authority to accept notice on behalf of ASIC.[35]  ASIC claims the Wells Fargo corporate representative testified that Wells Fargo did not receive notice of Shaf-Land's demand prior to suit being filed against Sunbelt and ASIC[36] and that the earliest communication in Wells Fargo's file related to this claim is

---

[29] R. Doc. 44-1 at 10 (*citing* R. Doc. 44-2 at 11, 13, 15).
[30] R. Doc. 44-1 at 14.
[31] R. Doc. 44-1 at 14 (*citing* R. Doc. 44-2 at 11).
[32] R. Doc. 44-1 at 14.
[33] R. Doc. 44-1 at 15.
[34] R. Doc. 44-1 at 15.
[35] R. Doc. 45 at 3-4.
[36] R. Doc. 45 at 4 (*citing* R. Doc. 45-1 at 13-20, 25-26, 29-32).

October 22, 2015, after this suit was filed.[37]  ASIC points out that it has produced the entirety of the underwriting files for the two Sunbelt policies at issue (the 2014-2015 and 2015-2016 ASIC policies), as well as the non-privileged portions of its claim file relating to this claim[38] and that Wells Fargo has similarly produced its entire file related to Sunbelt.[39]  ASIC also asserts that the discovery requests are overly broad, unduly burdensome, and not proportional to the needs of this litigation.[40]

With respect to Sunbelt's discovery requests regarding how ASIC accepts notice of claims by other insureds, ASIC asserts that the way ASIC accepted notice of claims submitted on behalf of non-party insureds under policy language that may be different from the policy language at issue in this litigation is irrelevant to Sunbelt's failure to comply with the claims-made-and-reported requirement at issue here.[41]  ASIC contends that even if Sunbelt's request is limited to one and a half years, ASIC would be required to review almost 4,000 claims files to determine how notice was provided, which is an objectively unreasonable request and not proportional to the needs of this case.[42]  ASIC also asserts that these discovery requests seek confidential information regarding claims submitted by non-party insureds that should be protected from discovery.  ASIC further claims that the information sought is irrelevant because it has never taken the position that notice must be received in writing from Sunbelt.[43]

With respect to the second category of discovery requests, ASIC asserts that information regarding how Sunbelt has provided notice of other claims is irrelevant in this case, especially because Sunbelt did not report Shaf-Land's claim to ASIC or Wells Fargo until after this suit was

---

[37] *See*, R. Doc. 45-1 at 13-16, 25-26, 29-32.
[38] R. Doc. 45 at 5.
[39] R. Doc. 45 at 4.
[40] R. Doc. 45 at 7-8.
[41] R. Doc. 45 at 8.
[42] R. Doc. 45 at 8-9.
[43] R. Doc. 45 at 9-10.

filed.[44]  ASIC asserts that Sunbelt seeks to compel ASIC to produce years' worth of underwriting files and years' worth of claims files regarding policies and claims not at issue in this case.  ASIC argues that whether it received notice of other claims from Wells Fargo, Sunbelt, or from another entity is irrelevant to the claim at issue in this case and amounts to nothing more than a fishing expedition.  ASIC further contends that Wells Fargo has already produced its entire file relating to the Sunbelt account, so the information regarding Sunbelt's claims history is already in Sunbelt's possession.[45]

Finally, ASIC asserts that the discovery sought regarding the relationship between ASIC and Wells Fargo is irrelevant because there is no evidence that Wells Fargo received notice of the claim before this suit was filed, mooting Sunbelt's claim that notice to Wells Fargo constituted notice to ASIC.[46]  ASIC asserts that Wells Fargo has no authority to accept notice on behalf of ASIC[47] and has no authority to act on ASIC's behalf, so there are no documents that evidence Wells Fargo's authority to act on ASIC's behalf.[48]  ASIC points out that Wells Fargo has already produced its entire file related to Sunbelt, which contains no evidence that Wells Fargo has either explicit or implicit authority to accept notice of claims on ASIC's behalf.[49]  As such, ASIC asserts the Court should deny the Motion.

In response, Sunbelt asserts that contrary to ASIC's assertions, it is "hotly disputed" whether Wells Fargo received notice of Shaf-Land's claim against Sunbelt and whether Wells Fargo served as ASIC's agent for receipt of notice of claims.[50]  Sunbelt asserts that its corporate representative, Tim Capp, testified that he spoke with a Wells Fargo representative about this claim

---

[44] R. Doc. 45 at 11.
[45] R. Doc. 45 at 12.
[46] R. Doc. 45 at 10.
[47] R. Doc. 45 at 10 (*citing* R. Docs. 45-1 and 45-2).
[48] R. Doc. 45 at 10.
[49] R. Doc. 45 at 10-11 (*citing* R. Doc. 45-1).
[50] R. Doc. 58 at 4.

in May 2015.[51]  Sunbelt also asserts that Shaf-Land's counsel sent written notice of the claim to

Wells Fargo, through Louisiana's Commissioner of Insurance, on May 5, 2015,[52] and that Sunbelt

has an outstanding public records request to the Commissioner of Insurance seeking evidence that

his department forwarded that notice to Wells Fargo.[53]  Sunbelt further asserts that the evidence

shows Wells Fargo was vested with apparent authority to receive notice on ASIC's behalf because

Sunbelt was not allowed to interact with ASIC directly when coverage was placed, Wells Fargo

sold Sunbelt only AIG-group policies for seven years, Wells Fargo was compensated by ASIC

directly, and in several instances, Sunbelt reported claims to Wells Fargo that AIG ultimately

covered.[54]  Because there are genuine issues of material fact on these issues, Sunbelt asserts that

additional discovery is needed.

Turning to the three categories of discovery requests at issue, Sunbelt asserts that discovery

regarding how ASIC receives notice of claims is necessary unless ASIC is willing to (1) forego

any argument that notice of a claim must be received in writing from Sunbelt and (2) stipulate that

if Wells Fargo received notice of the claim, orally or in writing, and Wells Fargo is found to be

ASIC's agent for receipt of claims, there was proper notice under the ASIC policy in this case.[55]

Although ASIC claims the discovery requests involve a lot of claims, Sunbelt notes that ASIC

makes no mention of whether the claims files can be electronically searched and the effort involved

in doing so, and further asserts that ASIC likely has a system to retrieve information from its claims

---

[51] R. Doc. 58 at 5.  In the Reply, Sunbelt asserts that, "We have not yet received the representative's deposition transcript, but will supplement this memorandum with it when it is received."  (R. Doc. 58 at 5, n.1).  The Court notes that although Sunbelt subsequently included a portion of the deposition transcript from the deposition of Timothy Capp, Sunbelt's corporate representative, with its Supplemental Memorandum in Support of Motion to Compel (*See,* R. Docs. 68 and 68-1), as of the date of this Ruling and Order, Sunbelt has not provided a complete copy of Capp's deposition transcript.
[52] R. Doc. 58-2 at 3.
[53] R. Doc. 58 at 5 (*citing* R. Doc. 58-3).
[54] R. Doc. 58 at 5-6 (*citing* R. Doc. 59 at 3, 6-22).
[55] R. Doc. 58 at 1.

files because its parent company, AIG, is one of the largest insurance groups in the United States.[56] With respect to Sunbelt's claims history, Sunbelt asserts that Wells Fargo's production and corporate deposition show that Sunbelt previously reported claims to Wells Fargo that were covered by ASIC.[57]  Sunbelt contends that ASIC's documents should confirm that not only were these claims covered, but there was never a question of whether notice was proper in those instances.  Thus, Sunbelt argues the documents sought are relevant and should be produced. Finally, Sunbelt contends that the discovery requests regarding the relationship between ASIC and Wells Fargo go to the heart of the case.  Sunbelt asserts that ASIC should be compelled to respond to its question regarding what Wells Fargo is authorized to do on ASIC's behalf, since it is clear that at the very least, Wells Fargo is authorized to sell ASIC's policies to insureds like Sunbelt.[58] Sunbelt further asserts that ASIC should also be required to produce all documents that govern, evidence, comprise, or discuss its relationship with Wells Fargo.[59]

On December 7, 2016, the undersigned issued a Notice and Order regarding the Motion, requiring the parties to meet and confer as required by Federal Rule of Civil Procedure 37(a)(1) and requiring Sunbelt to file a supplemental certification for the Motion detailing the parties' efforts to reach a resolution regarding these discovery disputes.[60]  Sunbelt filed a Supplemental Certification on December 16, 2016, explaining that while the parties were unable to reach a resolution regarding any of the issues, they were still attempting to reach a resolution and that Sunbelt would file a supplemental certification with the Court once the issues were resolved or

---

[56] R. Doc. 58 at 8.

[57] R. Doc. 58 at 7.

[58] R. Doc. 58 at 6.

[59] R. Doc. 58 at 6-7.  The Court notes that although the Reply only mentions Request for Production No. 1, Sunbelt clarified in its Second Supplemental Certification Regarding Motion to Compel that Request for Production No. 4, which also concerns this issue, is still in dispute.  (R. Doc. 63 at 2).

[60] R. Doc. 60.

discussions reached an impasse.[61]   When nothing further was communicated to the Court, the undersigned issued a second Notice and Order on January 27, 2016, requiring the parties to file a second supplemental certification for the Motion regarding the status of the discovery dispute.[62]

On February 10, 2017, Sunbelt filed a Second Supplemental Certification Regarding Motion to Compel, asserting that the parties were able to resolve some of the issues raised in the Motion.[63]   Sunbelt claims that the parties were unable to resolve their dispute regarding the discovery requests concerning the way ASIC receives notice of claims and the relationship between ASIC and Wells Fargo.   According to Sunbelt, "ASIC has indicated it has found no documents that evidence that relationship, but that it is continuing to search for them in one additional location," although Sunbelt doubts whether ASIC will provide a satisfactory response to the request.[64]   Sunbelt further asserts that the parties have resolved their dispute regarding the documents sought pertaining to Sunbelt's claims history, as ASIC has agreed to produce documents evidencing and discussing notice of previous claims Sunbelt made under its ASIC policy and ASIC's communications with Wells Fargo regarding notice of Sunbelt claims.   Thus, with respect to this category of requests, Sunbelt merely asks the Court to set a reasonable deadline by which those documents should be produced.[65]   Sunbelt further asserts that the Court may want to defer ruling on the Motion because the parties are discussing mediation.[66]

---

[61] R. Doc. 61
[62] R. Doc. 62.
[63] R. Doc. 63.
[64] R. Doc. 63 at 2.  Sunbelt also noted that although its first supplemental certification referred only to Interrogatory No. 1 and Request for Production No. 1, Request for Production No. 4, which also concerns this topic, was mistakenly omitted.  (R. Doc. 63 at 2, n. 4).
[65] R. Doc. 63 at 3.
[66] R. Doc. 63 at 3.

Thereafter, on February 24, 2017, ASIC filed a Motion for Leave to File Its Sur-Reply Memorandum in Opposition to Sunbelt's Motion to Compel,[67] which the Court granted.[68]  While the Sur-Reply re-urges the arguments previously raised in ASIC's Opposition to the Motion,[69] ASIC further asserts that Sunbelt's corporate representative, Timothy Capp, has testified that Sunbelt did not report Shaf-Land's claim to ASIC before this suit was filed.[70]  Although a complete copy of Capp's deposition transcript was not provided, ASIC attached portions of the deposition transcript to the Sur-Reply.[71]  ASIC asserts that although Capp testified that he discussed Shaf-Land's claim with someone at Wells Fargo in May 2015, Capp further testified that he never directed Wells Fargo to report the claim to ASIC.[72]  Because there is no evidence that Sunbelt ever provided notice to Wells Fargo prior to October 2015, ASIC maintains the Motion should be denied because the information and documents sought are irrelevant.

The Court also granted[73] Sunbelt's *Ex Parte* Motion for Leave to File Supplemental Memorandum in Support of Motion to Compel,[74] which was filed on March 1, 2017.  In the Supplemental Memorandum, Sunbelt asserts that ASIC omitted the portion of Timothy Capp's deposition during which Capp testified that when he first spoke to someone at Wells Fargo about Shaf-Land's claim in May 2015, he did not think anything further needed to be done to put Sunbelt's insurers on notice of the claim because Capp was under the impression that Wells Fargo was a representative of the insurance company.[75]  Sunbelt further asserts that ASIC's Sur-Reply mistakenly asserts that La. R.S. § 22:1564 recognizes that an agency relationship between a

---

[67] R. Doc. 64.
[68] R. Doc. 66.
[69] R. Doc. 45.
[70] R. Doc. 67 at 3-4.
[71] R. Doc. 67-1 at 1-23.
[72] R. Doc. 67 at 4.
[73] R. Doc. 66.
[74] R. Doc. 65.
[75] R. Doc. 68 at 2 (*quoting* R. Doc. 68-1 at 3-4).

producer like Wells Fargo and an insurer like ASIC is only established for the collection of premiums.[76]  Sunbelt asserts that the statute describes a general situation and says nothing about the specific relationship between ASIC and Wells Fargo.  Sunbelt maintains its position that the Motion should be granted because information and documents regarding the relationship between ASIC and Wells Fargo are clearly relevant to the coverage issues presented in this case.

## II.     Law and Analysis

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  "For purposes of discovery, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'"  *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1)).

However, the Court must limit discovery if it determines that:

> (i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at

---

[76] R. Doc. 68 at 2 (*quoting* R. Doc. 67 at 5).

(iv)    stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  Motions to compel discovery responses are governed by Rule 37(a) of the Federal Rules of Civil Procedure.  "Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33."  *Gondola v. USMD PPM, LLC*, 2016 WL 3031852, at *2 (N.D. Tex. May 27, 2016) (*citing* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv)).  "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable."  *Gondola*, 2016 WL 3031852 at *2 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

**A.  Discovery regarding how ASIC receives notice of claims.**

In the Motion, Plaintiff seeks to compel ASIC to respond to the following discovery requests regarding how ASIC receives notice of claims:

> **REQUEST FOR ADMISSION NO. 1:**
> Please admit that, during the past 5 years, you have accepted notice on a claims-made-and-reported policy when that notice was provided to you, not by your insured, but by a producer, agent, or broker.

> **REQUEST FOR ADMISSION NO. 2:**
> Please admit that, during the past 5 years, you have accepted notice on a claims-made-and-reported policy when that notice was provided to you, not by your insured, but by a party making a claim against your insured.

> **REQUEST FOR ADMISSION NO. 3:**
> Please admit that, during the past 5 years, you have accepted notice on a claims-made-and-reported policy when that notice was made orally.

**REQUEST FOR ADMISSION NO. 4:**
Please admit that, during the past 5 years, you have accepted notice on a claims-made-and-reported policy when that notice was provided not to you, but to Wells Fargo.

**REQUEST FOR ADMISSION NO. 5:**
Please admit that, during the past 5 years, when your insured had a policy that included form you have accepted notice under Coverage D when that notice was not sent to either:
Manager, Pollution Insurance Products Dept.
AIG Property Casualty Claims, Inc.
Attn.: CID
101 Hudson Street, 31st Floor
Jersey City, NJ 07302
Fax: 866-260-0104
E-mail: severityfnol@aig.com
or another address you substituted in writing.

**INTERROGATORY NO. 2:**
If your response to Request for Admission No. 1 was an admission (in whole or in part), please provide for each such instance: (i) the name of the insured, (ii) the specific language of the provisions of the insured's policies that governed notice, (iii) the manner in which notice was provided (including, without limitation, how it was provided and who it was provided to), and (iv) the identity of the ASIC (or any of its affiliated companies') personnel involved in the adjustment of the claim.

**INTERROGATORY NO. 3:**
If your response to Request for Admission No. 2 was an admission (in whole or in part), please provide for each such instance: (i) the name of the insured, (ii) the specific language of the provisions of the insured's policies that governed notice, (iii) the manner in which notice was provided (including, without limitation, how it was provided and who it was provided to), and (iv) the identity of the ASIC (or any of its affiliated companies') personnel involved in the adjustment of the claim.

**INTERROGATORY NO. 4:**
If your response to Request for Admission No. 3 was an admission (in whole or in part), please provide for each such instance: (i) the name of the insured, (ii) the specific language of the provisions of the insured's policies that governed notice, (iii) the manner in which notice was provided (including, without limitation, how it was provided and who it was provided to), and (iv) the identity of the ASIC (or any of its affiliated companies') personnel involved in the

adjustment of the claim.

**INTERROGATORY NO. 5:**
If your response to Request for Admission No. 4 was an admission (in whole or in part), please provide for each such instance: (i) the name of the insured, (ii) the specific language of the provisions of the insured's policies that governed notice, (iii) the manner in which notice was provided (including, without limitation, how it was provided and who it was provided to), and (iv) the identity of the ASIC (or any of its affiliated companies') personnel involved in the adjustment of the claim.

**INTERROGATORY NO. 6:**
If your response to Request for Admission No. 5 was an admission (in whole or in part), please provide for each such instance: (i) the name of the insured, (ii) the specific language of the provisions of the insured's policies that governed notice, (iii) the manner in which notice was provided (including, without limitation, how it was provided and who it was provided to), and (iv) the identity of the ASIC (or any of its affiliated companies') personnel involved in the adjustment of the claim.

**REQUEST FOR PRODUCTION NO. 5:**
For any claim identified in your responses to Interrogatories 2 through 6, please produce: (i) the policy the claim was made under and (ii) any documents that comprise, evidence, or discuss the notice provided of that claim.[77]

ASIC objected to Request for Admission Nos. 1-5 by asserting that the information sought is irrelevant, that the requests seek information regarding insureds who are not parties to this litigation, and that the requests are vague, ambiguous, overly broad, unduly burdensome, vexatious and/or intended solely for the purpose of harassment.[78] Subject to these objections, ASIC admitted that in order for coverage to apply in this case, "the claim for bodily injury or property damage [must] first be made against the insured [Sunbelt] and reported to us in writing during the policy period or any extended reporting period if applicable" and that ASIC first received notice of Shaf-Land's claims against Sunbelt when it was served with a copy of this lawsuit on or about August

---

[77] R. Doc. 44-2 at 5-9, 11-12, 15.
[78] R. Doc. 44-2 at 5-10.

4, 2015.[79]  ASIC objected to Interrogatory Nos. 2-6 by referring back to its responses to Request for Admission Nos. 1-5.[80]  ASIC similarly objected to Request for Production No. 5 by referring to its objections and responses to Request for Production Nos. 2-6, in which ASIC asserts that the documents sought by Sunbelt are (1) irrelevant; (2) already in Sunbelt's possession; and (3) seek information regarding entities, policies, and insureds that are not parties in this case,[81] and that the requests are vague, ambiguous, overly broad, unduly burdensome, vexatious and/or intended solely for the purpose of harassment.[82]  Subject to these objections, ASIC responded that it first received notice of Shaf-Land's claims on or about August 4, 2015,[83] that it agreed to produce the non-privileged portion of any claim files related to Sunbelt's policy in accordance with the parties' protective order,[84] and that Wells Fargo was Sunbelt's agent.[85]

The Court agrees that Sunbelt's requests are overbroad and unduly burdensome to the extent that they seek information and documents regarding claims made under any claims-made-and-reported policies of other insureds for the last five years, seek the name of the insureds involved in those claims, and seek the identity of the personnel at ASIC or any of its affiliated companies who were involved in the adjustment of those claims.  Such requests encompass a large amount of possible documents and information, not all of which is reasonably calculated to lead to the discovery of admissible evidence.  Parties are not required to produce discovery if it would be unduly burdensome.  Fed. R. Civ. P. 26(b)(2)(C).  Sunbelt has not demonstrated that such additional information and documents sought by its discovery requests are reasonably calculated to lead to the discovery of admissible evidence.

---

[79] *Id.*
[80] R. Doc. 44-2 at 11-12.
[81] R. Doc. 44-2 at 14-16.
[82] R. Doc. 44-2 at 14-15.
[83] R. Doc. 44-2 at 14, 16.
[84] R. Doc. 44-2 at 15.
[85] R. Doc. 44-2 at 15.

Although the parties dispute whether Wells Fargo received notice of Shaf-Land's claim against Sunbelt[86] and whether Wells Fargo served as ASIC's agent for receipt of notice of claims, the Court finds that some of the information and documents sought by Sunbelt's discovery requests are directly relevant to that issue, which is at the heart of this litigation. However, the Court finds it appropriate to limit Sunbelt's Request for Admission Nos. 1-5 to how ASIC received notice of property damage claims from other insureds under identical policy language, which requires that "the claim for . . . property damage is first made against the insured and reported to us in writing."[87] Further, the information provided shall be limited to notice of claims made within a one-year period preceding the filing of this suit. The Court also finds it appropriate to limit Sunbelt's Interrogatory Nos. 2-6 to the manner in which notice was provided, including how and to whom it was provided, which information shall also be limited to notice of claims made within a one-year period preceding the filing of this suit. Subject to the foregoing limitations, the Court will direct ASIC to provide supplemental responses to Request for Admission Nos. 1-5 and Interrogatory Nos. 2-6. The Court finds that Sunbelt has not shown that the documents sought by Request for Production No. 5 are relevant to this litigation. The Court further finds that Sunbelt is not foreclosed from seeking additional information and documents, if any, after reviewing the supplemental responses provided pursuant to this Ruling and Order. Upon seeking such relief, however, Sunbelt must articulate a particular need for any additional information or documents needed.

---

[86] While ASIC asserts that the corporate representative for Wells Fargo testified that Wells Fargo did not receive notice of Shaf-Land's claims against Sunbelt until after this suit was filed (R. Doc. 45 at 4; R. Doc. 45-1 at 20), Sunbelt asserts that its corporate representative testified that he spoke with a Wells Fargo representative about the claim in May 2015 and that Shaf-Land's counsel sent written notice of the claim to Wells Fargo through Louisiana's Commissioner of Insurance on May 5, 2015. (R. Doc. 58 at 5; R. Doc. 58-2 at 3). Thus, the Court notes that there is clearly a factual dispute in this case regarding whether Wells Fargo received notice of Shaf-Land's claims against Sunbelt before this suit was filed.

[87] *See*, R. Doc. 17-7 at 19.

**B. Discovery regarding the relationship between Wells Fargo and ASIC.**

Sunbelt also seeks to compel ASIC to respond to the following requests for information

and documents regarding the relationship between Wells Fargo and ASIC:

> **INTERROGATORY NO. 1:**
> Please describe the relationship between ASIC and Wells Fargo, both in general and particularly with regard to Policy No. EG 4068312 issued to Sunbelt. Please include in your answer a description of the things that Wells Fargo is authorized to perform on ASIC's behalf, and a listing of the documents in which that authority is granted.
>
> **REQUEST FOR PRODUCTION NO. 1:**
> Please produce any documents that govern, comprise, evidence, or discuss the relationship between Wells Fargo and ASIC (or any of its affiliated companies), both in general and particularly with regard to Policy No. EG 4068312 issued to Sunbelt.
>
> **REQUEST FOR PRODUCTION NO. 4:**
> Please produce any communications between Wells Fargo and ASIC (or any of its affiliated companies) regarding the authority of Wells Fargo to act on behalf of ASIC (or any of its affiliated companies).[88]

ASIC objected to Interrogatory No. 1 by asserting that it calls for a legal conclusion.[89]  Subject to

that objection, ASIC responded that Wells Fargo was the surplus lines producer on the Sunbelt

policy at issue in this case and that, "as already admitted by Sunbelt, Wells Fargo was Sunbelt's

agent."[90]  ASIC objected to Request for Production No. 1 by asserting that it seeks irrelevant

information, is overly broad and vexatious, it incorporates the term "affiliated companies,"[91] and

ASIC refers to its objections and response to Interrogatory No. 1.[92]  ASIC similarly objected to

---

[88] R. Doc. 44-2 at 11, 13,15.
[89] R. Doc. 44-2 at 11.
[90] Id.
[91] ASIC also refers to General Objection No. 13, in which ASIC "objects to the definition of and use of the term 'affiliated companies' to the extent it renders any discovery request overly broad inasmuch as it seeks information from entities which are not parties to this litigation and seeks information from entities not within the control of ASIC." (R. Doc. 44-2 at 4).
[92] R. Doc. 44-2 at 13.

Request for Production No. 4 by asserting that it seeks irrelevant information, information regarding policies, claims, and insureds not at issue in this litigation, and it incorporates the term "affiliated companies."[93]  Subject to those objections, ASIC responded that Wells Fargo was the surplus lines producer on the Sunbelt policy at issue in this case and that Wells Fargo was Sunbelt's agent.[94]

With respect to Interrogatory No. 1, the Court finds that the information requested by Sunbelt is clearly relevant in this litigation.  As previously stated, whether Wells Fargo received notice of Shaf-Land's claim against Sunbelt and whether Wells Fargo served as ASIC's agent for receipt of notice of claims is at the center of the dispute between Sunbelt and ASIC.[95]  In its Opposition to the Motion, ASIC asserts that, "When a claim is reported to [Wells Fargo], [Wells Fargo] must report the claim to the insurer."[96]  ASIC also concedes in its discovery responses that Wells Fargo was the "surplus lines producer" on the Sunbelt policy at issue in this litigation.[97] Further, as Sunbelt points out, the corporate representative for Wells Fargo testified that Sunbelt was not allowed to communicate directly with ASIC regarding placement and procurement of coverage, which must be done by Wells Fargo on Sunbelt's behalf,[98] and that Wells Fargo was compensated by ASIC whenever it was a producer on a policy sold to one of ASIC's clients.[99] Thus, there is clearly a relationship between Wells Fargo and ASIC with respect to the Sunbelt policy at issue in this case and the parameters of that relationship are relevant to this litigation.  As such, the Court will direct ASIC to provide a supplemental response to Interrogatory No. 1.

---

[93] R. Doc. 44-2 at 15.
[94] *Id.*
[95] *See, supra*, note 76.
[96] R. Doc. 45 at 6 (*citing* R. Doc. 45-1 at 23-24, 27-28, 34).
[97] R. Doc. 44-2 at 11, 15.
[98] R. Doc. 58 at 5 (*citing* R. Doc. 59 at 3).
[99] R. Doc. 58 at 6 (*citing* R. Doc. 59 at 9).

With respect to Request for Production Nos. 1 and 4, the Court agrees that Sunbelt's requests are overbroad and unduly burdensome to the extent that they seek documents regarding ASIC's "affiliated companies," the definition of which has not been provided to the Court, they request documents regarding entities that are not parties to this litigation, and they are not limited to a particular time frame.  A request for documents that govern, evidence, or discuss the relationship between Wells Fargo and ASIC's "affiliated companies" and for communications between Wells Fargo and ASIC's "affiliated companies" regarding Wells Fargo's authority to act on behalf of ASIC or any of its "affiliated companies" may encompass a large array of documents and information, not all of which is reasonably calculated to lead to the discovery of admissible evidence.  Parties are not required to produce discovery if it would be unduly burdensome.  Fed. R. Civ. P. 26(b)(2)(C).  Sunbelt has not demonstrated that these discovery requests are reasonably calculated to lead to the discovery of admissible evidence.

However, the Court finds it appropriate to limit Sunbelt's discovery requests to documents that govern, comprise, evidence, or discuss the relationship between Wells Fargo and ASIC, only with respect to ASIC policies purchased by Sunbelt, and communications between Wells Fargo and ASIC regarding the authority of Wells Fargo to act on behalf of ASIC with respect to ASIC policies purchased by Sunbelt.  Further, the documentation provided shall be limited to documents created and communications sent and received within an eight-year period preceding the filing of this suit.[100]   Subject to the foregoing limitations, the Court will direct ASIC to provide supplemental responses to Interrogatory No. 1 and Request for Production Nos. 1 and 4.  To the extent that there are no documents that evidence the authority of Wells Fargo to act on behalf of

---

[100] The Court notes that in its Reply Memorandum in support of the Motion, Sunbelt asserts that, "Wells Fargo sold Sunbelt only AIG-group policies for 7 years."  (R. Doc. 58 at 6) (*citing* R. Doc. 59 at 6-8).  In light of this representation, it is possible there could be communications immediately preceding the issuance of the first AIG-group policy.

ASIC, as ASIC asserts in its Opposition,[101] ASIC is directed to supplement its response to Request for Production No. 4 to specify that no such documents exist.  The Court further finds that Sunbelt is not foreclosed from seeking additional information and documents, if any, after reviewing the supplemental responses provided pursuant to this Ruling and Order.  Upon seeking such relief, however, Sunbelt must articulate a particular need for any additional information or documents needed.

**C. Discovery regarding notice of previous claims Sunbelt has made under its ASIC policy.**

Although Sunbelt initially sought to compel ASIC to produce information and documents regarding how ASIC received notice of previous claims made by Sunbelt under its ASIC policy,[102] Sunbelt's Supplemental Certification Regarding Motion to Compel[103] provides that the parties have resolved this dispute.  According to Sunbelt, ASIC has agreed to produce documents evidencing and discussing notice of previous claims Sunbelt made under its ASIC policy and ASIC communications with Wells Fargo regarding notice of Sunbelt claims, in response to Request for Production Nos. 3 and 7.[104]  As such, the Court will set a reasonable deadline by which those documents shall be produced.

**III.    Conclusion**

For the reasons set forth herein, Sunbelt's Motion to Compel[105] is **GRANTED in part,** such that, within fourteen (14) days of this Ruling and Order, ASIC shall supplement its responses

---

[101] R. Doc. 45 at 10.
[102] R. Doc. 44-1 at 9, 15-16.
[103] R. Doc. 63.
[104] *See*, R. Doc. 44-2 at 14, 16.
[105] R. Doc. 44.

to Sunbelt's discovery requests by providing to Sunbelt:

(1) supplemental responses to Request for Admission Nos. 1-5 and Interrogatory Nos. 2-6, which requested information regarding how ASIC receives notice of claims made by other insureds.  ASIC is advised that this information may be limited to prior notices involving claims for property damage under policies that require that the claim be reported to ASIC in writing, and may also be limited to a one-year period preceding the filing of this lawsuit.  ASIC is advised that it need not provide the name of the insured on such other policies, the specific language in such other policies that governed notice, or the identity of the personnel at ASIC or any of its affiliated companies involved in adjustment of such other claims, but should include information regarding the manner in which such notice was given and who it was provided to.

(2) supplemental responses to Interrogatory No. 1 and Request for Production Nos. 1 and 4, which requested information and documentation regarding the relationship between Wells Fargo and ASIC.  ASIC is advised that this information and documentation may be limited to documents pertaining to the relationship between Wells Fargo and ASIC with respect to ASIC policies purchased by Sunbelt and may be limited to an eight-year period preceding the events complained of herein.

**IT IS FURTHER ORDERED** that within fourteen (14) days of the date of this Ruling and Order, ASIC shall supplement its responses to Request for Production Nos. 3 and 7 by producing documents evidencing and discussing notice of previous claims Sunbelt made under its ASIC policy and ASIC communications with Wells Fargo regarding notice of Sunbelt claims, as previously agreed by the parties.[106]

---

[106] *See*, R. Doc. 63 at 3.

**IT IS FURTHER ORDERED** that Sunbelt's Motion to Compel[107] is **OTHERWISE DENIED**.  As such, Sunbelt is not entitled to an award of reasonable expenses under Federal Rule of Civil Procedure 37.  *See*, Fed. R. Civ. P. 37(a)(5)(C).

**IT IS FURTHER ORDERED** that Sunbelt shall seek additional authorization from this Court prior to seeking to compel additional information and documents from ASIC.  Such request must be made no later than thirty (30) days after supplemental responses are provided.  Any request for additional information or documents beyond those authorized by this Ruling and Order shall be accompanied by specific facts that articulate the need for the additional documentation.

Signed in Baton Rouge, Louisiana, on March 8, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[107] R. Doc. 44.

23