UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHAF-LAND, L.L.C.** | * | **CIVIL ACTION NO. 15-CV-588** |
| | * | |
| **VERSUS** | * | **JUDGE JAMES J. BRADY** |
| | * | |
| **SUNBELT CHEMICALS CORP. and AIG SPECIALTY INSURANCE COMPANY** | * * * * | **MAG. JUDGE ERIN WILDER-DOOMES** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL
REVIEW OF MAGISTRATE JUDGE'S RULING ON MOTION TO COMPEL**

Harold J. Flanagan (#24091)
Sean P. Brady (#30410)
Andy J. Dupre (#32437)
Anders F. Holmgren (#34597)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Suite 2405
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251

Attorneys for Sunbelt Chemicals Corp.

**Exhibit 1**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. iii

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ................................................................................................................... 2

    A. Factual History ................................................................................................. 2

        1. Shaf-Land files suit, alleging that Sunbelt damaged its buildings; ASIC is Sunbelt's liability insurer. .............................................................. 2

        2. ASIC's relationship with Wells Fargo—and Sunbelt's interactions with both—strongly indicate an agency relationship. ................................ 4

    B. Procedural History ................................................................................................ 4

        1. Shaf-Land files suit. ................................................................................ 4

        2. ASIC moves for summary judgment; this Court continues the motion based on the need for additional discovery. .................................... 5

        3. Sunbelt must move to compel much of the discovery it seeks. .................... 6

            a. Sunbelt seeks discovery regarding ASIC's (1) claims-handling history, (2) past interactions with Sunbelt, and (3) relationship with Wells Fargo. ............................................ 6

            b. ASIC provides insufficient responses; Sunbelt moves to compel. ....................................................................................................7

        4. The Magistrate Judge orders ASIC to produce much, but not all, of the discovery Sunbelt sought. ................................................................ 8

III. LAW AND ARGUMENT ..................................................................................................... 9

    A. Legal standards. .................................................................................................. 9

        1. The standard of review: "Extreme deference" is afforded to the Magistrate Judge's order. ...................................................................... 9

        2. What is discoverable: Parties may obtain discovery relevant to their claims or defenses and proportional to the needs of the case. ............ 9

| | B. | The Magistrate Judge correctly determined that discovery regarding the way in which ASIC accepts notice of claims is relevant to this litigation. ................................................................................................................10 |
|---|---|---|
| | | 1. The Magistrate Judge correctly determined that whether Sunbelt provided notice of the claim to Wells Fargo, and whether Wells Fargo is ASIC's agent, are disputed and that the discovery Sunbelt seeks is relevant. ........................................................................10 |
| | | 2. The Magistrate Judge correctly weighed the necessity of this discovery against the burden it may work on ASIC and reached a reasonable compromise. .....................................................................13 |
| IV. | CONCLUSION | ................................................................................................................15 |

# TABLE OF AUTHORITIES

**Cases**

*Boulos v. Morrison*,
  503 So. 2d 1 (La. 1987) ............................................................................................................. 11

*Butts v. Aetna Cas. & Sur. Co.*,
  136 F.3d 1328 (5th Cir. 1998) (unpublished) ............................................................................ 11

*Cupit v. Whitley*,
  28 F.3d 532 (5th Cir. 1994), *cert. denied,* 513 U.S. 1163 (1995) ............................................... 12

*Good v. Fisk*,
  524 So. 2d 203 (La. App. 4th Cir. 1988) ................................................................................... 11

*Karam v. Travelers Ins. Co.*,
  813 F.2d 751 (5th Cir. 1987) ..................................................................................................... 11

*Lopez v. Current Director of Tex. Econ. Dev. Com.*,
  807 F.2d 430 (5th Cir. 1987) ................................................................................................... 1, 9

*Martin Fuel Dist. v. Trans Gulf Fuel, Inc.*,
  496 So. 2d 473 (La. App. 1st Cir. 1986) ................................................................................... 11

*Patton v. Jacobs Eng'g Grp. Inc.*,
  No. CV 15-00123-BAJ-RLB, 2016 WL 2770879 (M.D. La. May 13, 2016) (Jackson, C.J.) .......... 12, 14-15

*Spurrell v. Ivey*,
  630 So. 2d 1378 (La. App. 2d Cir. 1/25/94) ............................................................................. 11

*United States v. U.S. Gypsum*,
  333 U.S. 364 (1948) ................................................................................................................ 1, 9

*Wilkerson v. Stalder*,
  No. Civ. A. 00-304-JJB, 2011 WL 4433829 (M.D. La. Sept. 22, 2011) (Brady, J.) .................. 1, 9

**Other Authorities**

2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 444 (rev. perm. ed. 1982) ....................... 11

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 10

Fed. R. Civ. P. 37 ............................................................................................................................ 10

Fed. R. Civ. P. 72 .............................................................................................................................. 9

## MEMORANDUM IN OPPOSITION TO MOTION FOR PARTIAL
## REVIEW OF MAGISTRATE JUDGE'S RULING ON MOTION TO COMPEL

Defendant Sunbelt Chemicals Corporation opposes AIG Specialty Insurance Company's ("ASIC") motion for partial review of the Magistrate Judge's order (Rec. Doc. 69) on Sunbelt's motion to compel.

**I.    INTRODUCTION**

ASIC's motion bears a heavy burden. The order of a Magistrate Judge on a discovery matter may be overturned only if it is "clearly erroneous" or "contrary to law." As this Court has noted, the "clearly erroneous" standard requires the Magistrate Judge's order be given "*extreme* deference."[1] The order may be overturned only "if the reviewing Court on the entire evidence is 'left with the definite and firm conviction that a mistake has been committed.'"[2] That did not occur here. The Magistrate Judge's 23-page ruling—thorough, well-reasoned, and fair—should stand.

This case involves a claim by a landlord (the plaintiff, Shaf-Land, LLC) that its tenant (Sunbelt) damaged the leased buildings beyond normal wear-and-tear. Shaf-Land sued Sunbelt and its insurer, ASIC. ASIC contends that it was not notified of Shaf-Land's claim as required by the terms of the policy. Sunbelt contends that it did notify ASIC by reporting the claim to ASIC's special-purpose agent—a surplus-lines broker, Wells Fargo Insurance Services USA, Inc.[3]

---

[1]   *Wilkerson v. Stalder*, No. CIV.A. 00-304-JJB, 2011 WL 4433829, at *1 (M.D. La. Sept. 22, 2011) (Brady, J.) (citing *Lopez v. Current Director of Tex. Econ. Dev. Com.*, 807 F.2d 430, 434 n.3 (5th Cir. 1987)) (emphasis added).

[2]   *Id.* (quoting *United States v. U.S. Gypsum*, 333 U.S. 364, 395 (1948)).

[3]   A "surplus-lines" insurer is one that is not admitted (*i.e.*, licensed to sell insurance) in a particular state. In Louisiana (and many other states), a prospective insured may still purchase a policy from a surplus-lines carrier, but it must do so through a registered surplus-lines broker, like Wells Fargo.

The Magistrate Judge correctly determined that the discovery at issue in ASIC's motion—evidence of how ASIC routinely receives claims under claims-made-and-reported policies like Sunbelt's—is "directly relevant" to the notice issue, "which is at the heart of this litigation." In doing so, the Magistrate Judge considered each of the arguments that ASIC makes here—that (i) it is "undisputed" ASIC wasn't notified of the claim, (ii) it is "undisputed" that Wells Fargo cannot serve as ASIC's agent for receipt of claims, and (iii) the discovery is overbroad and unduly burdensome—and rejected them all. Even a cursory reading of the Magistrate Judge's 23-page ruling demonstrates that she carefully considered the facts and each party's arguments, weighed the factors set forth in Rule 26, and arrived at a reasonable solution considering both sides' interests. In fact, that solution resulted in Sunbelt being *denied* a significant portion of what it requested on the topics at issue.

One cannot read the Magistrate Judge's ruling and be left with "a definite and firm conviction that a mistake has been committed." Her careful consideration of the facts and weighing of the factors at play in this discovery dispute should be afforded extreme deference. ASIC's attempts to overturn the Magistrate Judge's order should be rejected.

## II.    BACKGROUND

### A.    Factual History

#### 1.    Shaf-Land files suit, alleging that Sunbelt damaged its buildings; ASIC is Sunbelt's liability insurer.

The plaintiff, Shaf-Land, owns a commercial property in Port Allen. Shaf-Land leased the property to Sunbelt from April 2008 to April 2015. Shaf-Land contends that it discovered, at the end of the lease, that Sunbelt's business operations in the leased buildings damaged them beyond normal wear-and-tear.

2

ASIC was Sunbelt's general and pollution liability insurer during the lease period. The policies issued by ASIC included ones that spanned the policy periods May 1, 2014 to May 1, 2015 (the 2014-15 policy)[4] and May 1, 2015 to May 1, 2016 (the 2015-16 policy).[5] On each of these policies, Wells Fargo Insurance Services USA, Inc. is designated as the "Producer."[6]

Shaf-Land sent letters to both Sunbelt and Wells Fargo regarding its alleged damages. The letter to Sunbelt was sent on March 3, 2015,[7] and the letter to Wells Fargo (with a copy to Sunbelt) was sent on May 5, 2015.[8] In each letter, Shaf-Land alleged that its property had been damaged by Sunbelt's activities, attached evidence to support those assertions, and demanded coverage under an insurance policy numbered 4068312 (the number assigned to the two ASIC policies at issue here).

Shortly after he received Shaf-Land's May 5, 2015 letter, Sunbelt's CFO and Rule 30(b)(6) designee Tim Capp spoke with a representative of Wells Fargo, Matt Puckett, about Shaf-Land's claim.[9] That notice fell within the time period for reporting claims under ASIC's policy.[10] Mr. Capp testified that, after speaking to Mr. Puckett, he did not think "anything further needed to be

---

[4] Rec. Doc. 17-8.

[5] Rec. Doc. 17-7.

[6] Rec. Doc. 17-8 at pp. 1, 5 (pages bates-labeled ASIC POL 0000001 & 0000005); Rec. Doc. 17-7 at pp. 3, 7 (bates-labeled ASIC POL 0000089 & 0000093). A "producer," generally, is a person or entity licensed to sell insurance.

[7] Rec. Doc. 17-4, pp. 7-10.

[8] Rec. Doc. 23-4.

[9] Sunbelt 30(b)(6) deposition, excerpts of which are attached as Exhibit A, at p. 41.

[10] Sunbelt first learned of the claim on March 3, 2015, within 60 days of the end of ASIC's 2014-15 policy period on May 1, 2015. Because the policy was renewed, Sunbelt had until 60 days after the expiration of the policy period (until June 30, 2015) to report the claim. *See* ASIC 2014-15 Policy, Rec. Doc. 17-8, at p. 39 (page labeled ASIC POL 0000039).

3

done to put [Sunbelt's] insurers on notice" of the claim.[11] That was because, at that time, Mr. Capp was "under the impression that Wells Fargo was a representative of the insurance company."[12]

### 2. ASIC's relationship with Wells Fargo—and Sunbelt's interactions with both—strongly indicate an agency relationship.

Mr. Capp had good reason to believe that Wells Fargo acted on ASIC's behalf, and that nothing else need be done after Wells Fargo was made aware of the claim. Wells Fargo was the face of the insurance industry for Sunbelt. Because ASIC is a surplus-lines insurer, Sunbelt was not allowed to interact directly with ASIC when coverage was placed—all contact was through Wells Fargo.[13] Wells Fargo also sold Sunbelt only AIG-group policies for seven years.[14] AIG compensated Wells Fargo directly for the sale of those policies.[15] And, in numerous instances during that seven-year period, Sunbelt reported claims directly to Wells Fargo that AIG ultimately covered.[16]

### B. Procedural History

#### 1. Shaf-Land files suit.

Shaf-Land filed this lawsuit in June 2015 against both Sunbelt and ASIC. The petition demands "from ASIC any and all recovery due under the terms of any and all policies issued by [ASIC] that provide coverage for the claims made herein."[17]

---

[11]  Sunbelt 30(b)(6), Exhibit A, at pp. 101-02.

[12]  *Id.*

[13]  Wells Fargo 30(b)(6) deposition, excerpts of which are attached as Exhibit B, at p. 67.

[14]  *Id.*, pp. 94-96.

[15]  *Id.*, pp. 135-37. As its full name (AIG Specialty Insurance Company) suggests, ASIC is an AIG-group company.

[16]  *Id.*, pp. 140-50.

[17]  Petition, Rec. Doc. 1-2, at ¶ 19 (misnumbered as ¶ 17).

4

### 2. ASIC moves for summary judgment; this Court continues the motion based on the need for additional discovery.

In May 2016, ASIC moved for summary judgment, contending that its policy did not cover Sunbelt for Shaf-Land's claims. It argued, among other things, that Sunbelt did not timely report Shaf-Land's claim, as required by the policies' Coverage D (Pollution Legal Liability).[18] Coverage D provides coverage on a claims-made-and-reported basis. For coverage to attach, a claim must be made against the insured and reported to ASIC during that policy period. ASIC argued that Sunbelt first received notice of Shaf-Land's claims during the 2014-15 policy, but did not report the claim to ASIC until after that policy expired and a new one (the 2015-16 policy, whose terms are essentially the same as the 2014-15 policy's) had taken its place.

In response, Sunbelt moved to continue the hearing on ASIC's motion until additional discovery could be conducted. Sunbelt noted that it had served discovery on ASIC—specifically, discovery concerning ASIC's relationship with Wells Fargo, and whether ASIC has a history of accepting claims submitted to Wells Fargo and other brokers.[19] Sunbelt argued that it needed that discovery to determine whether the notice Wells Fargo received constituted notice to ASIC.

The Court granted Sunbelt's motion to continue and ordered that ASIC's motion be dismissed from the Court's docket to allow the parties to conduct the additional discovery.[20]

---

[18]  Rec. Doc. 17-1 at pp. 10-13.

[19]  *E.g.*, Rec. Doc. 23-1, p. 6.

[20]  Rec. Doc. 25. The Court recognized that ASIC would have the right to re-notice its motion following such discovery.

### 3. Sunbelt must move to compel much of the discovery it seeks.

#### a. Sunbelt seeks discovery regarding ASIC's (1) claims-handling history, (2) past interactions with Sunbelt, and (3) relationship with Wells Fargo.

Sunbelt sought three categories of information and documents from ASIC:

- **ASIC's claims-handling history, generally:** Sunbelt asked ASIC to admit that it had previously accepted notice of claims on claims-made-and-reported policies in situations where that notice: (1) had not been made in writing, (2) had not been given by the insured, (3) had been made through a producer, agent, or broker, and/or (4) had been made in a manner other than its policy specified.[21] Sunbelt also sought limited information—the policy language and method of receiving notice—for each instance in which ASIC accepted notice in a specified way.[22]

- **ASIC's handling of Sunbelt's claims:** Sunbelt requested information about ASIC's handling of previous Sunbelt claims, including how notice of such claims had been provided.[23] Sunbelt also sought communications between ASIC and Wells Fargo relating to Sunbelt.[24] Sunbelt also asked for ASIC's full underwriting file for both the 2014-15 and 2015-16 policies.[25]

- **ASIC's relationship with Wells Fargo:** Sunbelt also inquired about ASIC's relationship with Wells Fargo.[26] In addition to a description of that relationship,

---

[21]   Exhibit C, ASIC Discovery Responses, Requests for Admission 1-5. Sunbelt incorporates ASIC's entire discovery response into this memorandum, as if copied herein *in extenso*.

[22]   *Id.*, Interrogatories 2-6; *id.*, Request for Production 5. The interrogatories also sought the name of the insured and the names of the ASIC personnel involved in handling each claim. For expedience, Sunbelt later agreed not to seek that information.

[23]   *Id.*, Interrogatory 7 ("If Sunbelt has made a prior claim on Policy No. EG 4068312, please state how notice of the claim was provided, including, without limitation, the identity of the person to whom the claim was reported and the form of the notice."); Request for Production 7 ("For any other claim made by Sunbelt under ASIC Policy No. EG 4068312 (or any of its predecessors), please produce any document that comprises, evidences, or discusses the notice provided of that claim.").

[24]   *Id.*, Request for Production 3 ("Please produce any communications between Wells Fargo and ASIC (or any of its affiliated companies) regarding Sunbelt not produced in response to Request for Production No. 2.").

[25]   *Id.*, Request for Production 8; *see also* Exhibit D, correspondence from Sean Brady to Alistair Ward, Sept. 19, 2016.

[26]   *Id.*, Exhibit C, ASIC Discovery Responses to Interrogatory 1 ("Please describe the relationship between ASIC and Wells Fargo, both in general and particularly with regard to Policy No. EG 4068312

6

>Sunbelt also asked ASIC to produce documents and communications concerning that relationship, particularly Wells Fargo's authority to act on ASIC's behalf.[27]

### b. ASIC provides insufficient responses; Sunbelt moves to compel.

ASIC's discovery responses raised meritless objections and provided inadequate and insufficient information. It objected to nearly every request on the grounds of relevance.[28] It objected to providing any information related to notice given and accepted under any policy other than Sunbelt's.[29] In many instances, it failed to respond directly to the request posed to it.[30] And, in nearly all, it rested on a string of boilerplate objections.[31]

Sunbelt engaged in a protracted effort to confer with ASIC about its discovery responses—an effort that continued even after Sunbelt moved to compel adequate responses on October 24, 2016.[32] Ultimately, ASIC remained steadfast in its refusal to produce much of what Sunbelt requested.

---

issued to Sunbelt. Please include in your answer a description of the things that Wells Fargo is authorized to perform on ASIC's behalf, and a listing of the documents in which that authority is granted.").

[27] *Id.*, Request for Production 1 ("Please produce any documents that govern, comprise, evidence, or discuss the relationship between Wells Fargo and ASIC (or any of its affiliated companies), both in general and particularly with regard to Policy No. EG 4068312 issued to Sunbelt."); *id.*, Request for Production 4 ("Please produce any communications between Wells Fargo and ASIC (or any of its affiliated companies) regarding the authority of Wells Fargo to act on behalf of ASIC (or any of its affiliated companies).").

[28] *Id.*, response to Requests for Admission 1-5; *id.*, response to Interrogatories 2-7; *id.*, response to Requests for Production 1-5, 8.

[29] *Id.*, response to Requests for Admission 1-5; *id.*, response to Interrogatories 2-7; *id.*, response to Requests for Production 2-5.

[30] *E.g., id.*, response to Interrogatory 1.

[31] *E.g., id.*, response to Requests for Admission 1-5; *id.*, response to Requests for Production 1.

[32] *See* Exhibit D (September 29, 2016 email from Sean P. Brady to Alistair M. Ward); Rec. Docs. 61 & 63 (certifications filed by Sunbelt at the Court's request regarding the parties' attempts to resolve their dispute).

7

      **4.      The Magistrate Judge orders ASIC to produce much, but not all, of the discovery Sunbelt sought.**

On March 8, the Magistrate Judge issued a 23-page ruling and order granting Sunbelt's motion to compel in part, and denying it in part.[33] The Magistrate Judge detailed the parties' arguments regarding the facts of the case and the necessity of Sunbelt's requested discovery. She then issued reasoned rulings on each category of discovery at issue:

- **ASIC's claims-handling, generally:** The magistrate ruled that ASIC must provide supplemental responses to Requests for Admission 1-5 and Interrogatories 2-6, which sought information regarding how ASIC received notice of claims. The magistrate limited the requests to notice provided under policies "that require the claim to be reported to ASIC in writing."[34] She also limited the requests to the one-year period that preceded the filing of this lawsuit (Sunbelt had sought five years).[35]

- **ASIC's relationship with Wells Fargo:** The magistrate ordered that ASIC must provide information and documents regarding its relationship with Wells Fargo (Interrogatory 1 and Requests for Production 1 & 4). However, ASIC's obligation was limited to documents pertaining to the relationship with respect to policies purchased by Sunbelt. The obligation was also limited to the eight-year period preceding the events complained of.[36]

- **Previous Sunbelt claims:** The magistrate placed a deadline on ASIC's obligation to comply with the parties' agreement regarding production of documents relating to prior Sunbelt claims.[37]

ASIC agreed to comply with the second and third points of the Magistrate Judge's order. It provided supplemental responses and documentation on March 22 (which Sunbelt is reviewing). ASIC objects to the Magistrate Judge's ruling on the first point only.

---

[33]     Rec. Doc. 69.

[34]     *Id.*, p. 22.

[35]     *Id.*

[36]     *Id.*

[37]     *Id.*

8

### III. LAW AND ARGUMENT

#### A. Legal standards.

##### 1. The standard of review: "Extreme deference" is afforded to the Magistrate Judge's order.

Sunbelt's motion to compel is a nondispositive matter considered by the Magistrate Judge under Federal Rule of Civil Procedure 72(a). The rule makes clear that a district judge may set aside a magistrate judge's order (or any part of it) only if it is "clearly erroneous" or "contrary to law."

As this Court has recognized, the "clearly erroneous standard gives '*extreme deference*' to the lower court."[38] "A Magistrate Judge's finding is clearly erroneous," and may be overturned, only "if the reviewing Court on the entire evidence is 'left with the definite and firm conviction that a mistake has been committed.'"[39]

##### 2. What is discoverable: Parties may obtain discovery relevant to their claims or defenses and proportional to the needs of the case.

The Federal Rules provide that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

---

[38]  *Wilkerson v. Stalder*, No. Civ. A. 00-304-JJB, 2011 WL 4433829, at *1 (M.D. La. Sept. 22, 2011) (Brady, J.) (citing *Lopez v. Current Director of Texas Economic Dev. Com.*, 807 F.2d 430, 434 n.3 (5th Cir. 1987)) (emphasis added).

[39]  *Id.* (quoting *United States v. U.S. Gypsum*, 333 U.S. 364, 395 (1948)).

9

outweighs its likely benefit."[40] Parties are required to provide timely responses to discovery requests. A party that fails to respond to interrogatories or requests for production may be compelled to do so by motion.[41]

> **B.   The Magistrate Judge correctly determined that discovery regarding the way in which ASIC accepts notice of claims is relevant to this litigation.**
>
>> **1.   The Magistrate Judge correctly determined that whether Sunbelt provided notice of the claim to Wells Fargo, and whether Wells Fargo is ASIC's agent, are disputed and that the discovery Sunbelt seeks is relevant.**

ASIC argues repeatedly that it is "undisputed" that it was not timely notified of Shaf-Land's claim.[42] But the Magistrate Judge, after detailing the facts and the parties' arguments, concluded otherwise.[43] As the Magistrate Judge noted, Sunbelt's Tim Capp (its 30(b)(6) designee on insurance-related issues) testified that he spoke about the claim with Matt Puckett of Wells Fargo in May 2015—within ASIC's policy's reporting period.[44] Based on this testimony (and additional examination of the facts), the Magistrate Judge correctly concluded that "there is clearly a factual dispute in this case regarding whether Wells Fargo received notice of Shaf-Land's claims against Sunbelt before this suit was filed."[45]

The Magistrate Judge also correctly concluded that the discovery Sunbelt seeks is relevant to whether Wells Fargo acted as ASIC's agent for the receipt of notices of claims. An agency

---

[40]   Fed. R. Civ. P. 26(b).

[41]   Rule 37(a)(3)(B)(iii)-(iv). For relevant purposes, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

[42]   Rec. Doc. 72-1 at pp. ii, 1, 3, 5, 8, 12, and 16.

[43]   Pages 1-8 of the magistrate's opinion (Rec. Doc. 69) exhaustively detail the parties' arguments on this point.

[44]   Rec. Doc. 69 at pp. 7-8.

[45]   *Id.*

10

relationship, or mandate, can be established in several ways. The principal may expressly give its agent authority to perform a particular act or group of acts.[46] The granting of authority may also be implied: "Agency may be established through proof of a course of business or through proof that the board of directors knew of, or acquiesced in, the agent's authority and actions."[47] Finally, an agency relationship may be established—even if the parties do not intend to do so—"when the principal does some act to manifest the alleged agent's authority to an innocent third party and the third party then relies reasonably on the agent's manifested authority."[48]

The discovery at issue will show how ASIC receives notice under claims-made-and-reported policies generally, and from Wells Fargo in particular. It is expected to show a "course of business" in which ASIC treats notice to Wells Fargo (and other brokers) as if it were notice to ASIC—thus creating an implied agency relationship. It is also expected to demonstrate apparent authority—if ASIC proceeds as if notice to Wells Fargo (and other brokers) is notice to ASIC, that is certainly a manifestation of those brokers' authority to act on ASIC's behalf. And, in both instances, the discovery would undermine the strict stance on notice that ASIC has taken with respect to Sunbelt.

ASIC emphasizes the statement in its commission agreement with Wells Fargo that Wells Fargo is an "independent contractor." The Court need not consider this argument— ASIC did not present it to the Magistrate Judge, as it did not produce the commission agreement

---

[46] *Good v. Fisk*, 524 So. 2d 203, 205 (La. App. 4th Cir. 1988) (citing *Martin Fuel Dist. v. Trans Gulf Fuel, Inc.*, 496 So. 2d 473, 476 (La. App. 1st Cir.1986)).

[47] *Butts v. Aetna Cas. & Sur. Co.*, 136 F.3d 1328 (5th Cir. 1998) (unpublished) (citing *Karam v. Travelers Ins. Co.*, 813 F.2d 751, 754 (5th Cir. 1987), which quotes 2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 444, at 346 (rev. perm. ed. 1982)).

[48] *Spurrell v. Ivey*, 630 So. 2d 1378, 1383-84 (La. App. 2d Cir. 1/25/94) (citing *Boulos v. Morrison*, 503 So. 2d 1 (La. 1987)).

until after the Magistrate Judge ruled.[49] In any event, the commission agreement does not help ASIC. The agreement itself—which policyholders like Sunbelt *don't* see—may say that Wells Fargo is an "independent contractor." But the agreement also attaches a form of disclosure that Wells Fargo must provide to certain policyholders (including holders of property and specialty policies), on pain of *termination* by AIG. That disclosure, which ASIC does not mention, gives a much different impression of Wells Fargo's role:

- "We received compensation for the insurance companies *we represent* when placing your insurance."

- "We receive payment from insurance companies to defray the cost of services *provided for them*, including advertising, training, certain employee compensation, and other expenses."

- "Some of the insurance companies *we represent* may pay us additional commissions, sometimes referred to as contingent or bonus commission, which may be based on the total volume of business *we sell for them*, and/or the growth rate of that business, retention rate, claims loss ratio, other factors considering our entire book of business with an insurance company for a designated period of time."[50]

These ASIC-approved statements—that Wells Fargo "represent[s]" and "provide[s] [services] for" insurers—clearly give policyholders like Sunbelt the impression that Wells Fargo "represents" ASIC. The Magistrate Judge didn't have the benefit of seeing this document, but it simply confirms her conclusion.

Finally, ASIC also stubbornly presses the argument it made to the Magistrate Judge that

---

[49] *Patton v. Jacobs Eng'g Grp. Inc.*, No. CV 15-00123-BAJ-RLB, 2016 WL 2770879, at *3 (M.D. La. May 13, 2016) (Jackson, C.J.) ("A party is not entitled to raise new theories or arguments in its objections that the party did not present before a magistrate judge.") (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994), *cert. denied,* 513 U.S. 1163 (1995)).

[50] The disclosure is Exhibit C to the commission agreement, which is attached hereto as Exhibit E (emphasis added). The requirement Wells Fargo provide this disclosure is in paragraph 5 of the agreement. We highlighted the pertinent parts of the agreement on the exhibit.

12

this discovery is irrelevant because it has "never taken the position that written notice must have come *directly* from Sunbelt."[51] Sunbelt actually proposed to forego this discovery if ASIC would stand behind that assertion and stipulate that: (1) if anyone informed Wells Fargo of Shaf-Land's claim prior to June 30, 2015 (whether in writing or orally) and (2) it is ultimately determined that Wells Fargo was ASIC's agent (under any legal theory) for the receipt of notice of Shaf-Land's claims, then (3) ASIC received adequate notice of Shaf-Land's claim under Sunbelt's policies.[52] ASIC refused that stipulation and provided no counter-suggestion. The issue is still live, and Sunbelt is entitled to discovery that supports its defenses to ASIC's arguments.

      **2.    The Magistrate Judge correctly weighed the necessity of this discovery against the burden it may work on ASIC and reached a reasonable compromise.**

ASIC argued to the Magistrate Judge—much as it does here—that responding to these discovery requests would be burdensome and not proportional to the needs of the case. The Magistrate Judge took ASIC's position into account in reaching her ruling. She concluded that Sunbelt's requests *were* overbroad and unduly burdensome to the extent that they sought: (1) documents regarding claims made under any claims-made-and-reported insurance policies during the last five years, (2) the names of the insureds involved, and (3) the personnel at ASIC involved in handling those claims.

However, the Magistrate Judge also concluded that "some information and documents sought by Sunbelt's discovery requests are directly relevant to [whether Wells Fargo served as

---

[51]    Rec. Doc. 72-1, p. 12 (emphasis in original).

[52]    December 9, 2016 correspondence from Sunbelt's counsel to ASIC's counsel, attached as Exhibit F.

ASIC's agent for receipt of notice of claims], which is at the heart of this litigation."[53] She required ASIC to respond to Requests for Admission 1-5 only with regard to "property damage claims from other insureds under identical policy language."[54] She also limited the information required in response to Interrogatories 2-6 to "the manner in which notice was provided, including how and to whom it was provided" for claims made within one year prior to Shaf-Land filing suit.[55] There was no "mistake," of any degree, in reaching this reasoned conclusion. The Magistrate Judge "acted properly within [her] discretion in weighing the factors that influenced [her] decision."[56]

Faced with the Magistrate Judge's reasoned analysis, ASIC resorts to hyperbole. It repeatedly urges that it must analyze *all* claims that it received during a one-year period to respond as the Magistrate Judge directed.[57] But the Magistrate Judge's order clearly does not require that—it is limited to claims under policies with a reporting requirement identical to the one in Sunbelt's policy.

Policies like Sunbelt's should be reasonably identifiable in ASIC's files. Sunbelt's policy is written on a claims-made-and-reported basis—certainly ASIC knows which of its policy forms contain that requirement (and which are occurrence-based). In fact, when ASIC originally responded to Sunbelt's motion to compel, it could pinpoint the *exact* number of "Environmental

---

[53]   Rec. Doc. 69 at p. 17.

[54]   *Id.*

[55]   *Id.*

[56]   *Patton v. Jacobs Eng'g Grp. Inc.*, No. CV 15-00123-BAJ-RLB, 2016 WL 2770879, at *3 (M.D. La. May 13, 2016) (Jackson, C.J.).

[57]   Rec. Doc. 72-1, pp. 1, 4, 7, & 14.

14

Specialty Claims" that it handled during a particular 18-month period.[58]

So, ASIC can readily report the number of claims that are filed. But it never explained to the Magistrate Judge (and doesn't do so here) why those claims cannot be efficiently indexed and searched. The Magistrate Judge, despite the lack of concrete evidence of any burden, *still* considerably limited Sunbelt's discovery requests. That reasoned decision—weighing the needs of the discovery-seeking party against the burden on the producing party—was fair, legally correct, and entitled to "extreme deference" from this Court.

Finally, ASIC suggests that the Magistrate Judge's decision should be reversed because it will ultimately lead to additional requests for information.[59] ASIC did not raise this issue before the Magistrate Judge either, and the Court should not consider it.[60] Nevertheless, any problem can be cured simply by ASIC noting whether the claim was denied for late notice (*i.e.*, whether it was made during the policy or any extended reporting period).

## IV. CONCLUSION

The Magistrate Judge conducted an exhaustive review of the facts and the parties' arguments. She weighed the burden responding to Sunbelt's discovery requests would place on ASIC, and limited those requests accordingly. Her opinion is well-reasoned and thorough; it certainly does not leave the reader "with the definite and firm conviction that a mistake has been committed." The opinion should be granted the extreme deference required by this Circuit, and ASIC's

---

[58] Rec. Doc. 45 at p. 6 ("As undersigned counsel explained to Sunbelt's counsel during the parties' discovery conference, **3,791** claims were created for Environmental Specialty Claims on ASIC policies from January 1, 2015 to July 27, 2016.") (emphasis in original).

[59] Rec. Doc. 72-1 at p. 16.

[60] *Patton*, 2016 WL 2770879 at *3 ("A party is not entitled to raise new theories or arguments in its objections that the party did not present before a magistrate judge.").

15

efforts to overturn a portion of it should be rejected.

Respectfully submitted,

/s/     Sean P. Brady
Harold J. Flanagan (#24091)
Sean P. Brady (#30410)
Andy J. Dupre (#32437)
Anders F. Holmgren (#34597)
FLANAGAN PARTNERS LLP
201 St. Charles Ave., Suite 2405
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251

Attorneys for Sunbelt Chemicals Corp.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of record this 30th day of March 2017, by e-filing it into the CM/ECF system, which will automatically deliver a copy to all counsel.

/s/     Sean P. Brady

16