## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAF-LAND, L.L.C. | * | C.A. NO. 3:15-CV-00588-JJB-EWD |
| | * | |
|    Plaintiff | * | |
| | * | JUDGE:  JAMES BRADY |
| VERSUS | * | |
| | * | |
| SUNBELT CHEMICALS CORP. AND | * | MAGISTRATE JUDGE: |
| AIG SPECIALTY INSURANCE | * |    ERIN WILDER-DOOMES |
| COMPANY | * | |
| | * | |
|    Defendants | * | |

### SHAF-LAND'S MEMORANDUM IN OPPOSITION TO ASIC'S MOTION FOR SUMMARY JUDGMENT AND ASIC'S ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING WELLS FARGO'S LACK OF AUTHORITY

**BIENVENU, BONNECAZE, FOCO, VIATOR & HOLINGA, APLLC**

Phillip E. Foco, #25670
Anthony J. Lascaro, #32546
Patrick H. Hunt, #34599
Colin P. O'Rourke, #37252
4210 Bluebonnet Blvd.
Baton Rouge, LA 70809
Phone:  (225) 388-5600
Fax:  (225) 388-5622
phillip.foco@bblawla.com
anthony.lascaro@bblawla.com
patrick.hunt@bblawla.com
colin.orourke@bblawla.com

*Attorneys for SHAF-LAND, L.L.C.*

i

# TABLE OF CONTENTS

I.  ASIC fails to meet the summary judgment standard ................................................................ 1

II. ASIC received notice of SHAF-LAND's claim within the extended reporting period .......... 2

  A.  The fact that the extended reporting period endorsement was issued in conjunction with the Second Policy, or was not issued at all, does not preclude coverage. ................................... 5

III. Whether Wells Fargo received notice of the claim and served as ASIC's agent are both disputed and the subjects of ongoing discovery ............................................................................. 8

IV. Conclusion ................................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Butts v. Aetna Cas. & Sur. Co.,*
  136 F.3d 1328 (5th Cir. 1998) ................................................................................................. 9

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 322-23 (1986) ................................................................................................... 2

*Francioni v. Hartford Casualty Insurance Company,*
  No. 15-528, slip op. at 3 (M.D. La. 2017) ............................................................................... 2

*Good v. Fisk,*
  524 So.2d 203, 205 (La. App. 4 Cir. 1988) ............................................................................. 9

*Karam v. Travelers Ins. Co.,*
  813 F.2d 751, 754 (5th Cir. 1987) ........................................................................................... 9

*LeBlanc v. Wyeth, Inc.*,

   495 F.Supp.2d 609, 612 – 13 (W.D. La. 2007) ........................................................................... 2

*Martin Fuel Dist. v. Trans Gulf Fuel, Inc.,*

   496 So.2d 473, 476 (La. App. 1 Cir. 1986) ................................................................................. 9

*Spurrell v. Ivey,*

   Nos. 25359-CA, 25360-CA (La. App. 2 Cir. 1/25/94), 630 So.2d 1378, 1385-87 ................... 10

*State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of Louisiana,*

   No. 2010 CA 0689 (La. App. 1 Cir. 2/11/11), 56 So. 3d 1236, 1243-44 .................................. 10

*Tassin v. Golden Rule Insurance Company, No. 94 CA 0362 (La. App. 1 Cir. 12/22/94), 649*

   *So.2d 1050, 1054* ..................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 56(a). ............................................................................................................................ 1

**Other Authorities**

2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 444, at 346 (rev. perm. ed. 1982

   ..................................................................................................................................................... 9

**SHAF-LAND'S MEMORANDUM IN OPPOSITION
TO ASIC'S MOTION FOR SUMMARY JUDGMENT
AND ASIC'S ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING WELLS FARGO'S LACK OF AUTHORITY**

MAY IT PLEASE THE COURT:

Plaintiff, SHAF-LAND, L.L.C. ("SHAF-LAND"), respectfully submits this memorandum in opposition to the Motion for Summary Judgment and the Alternative Motion for Partial Summary Judgment Regarding Wells Fargo's Lack of Authority filed by Defendant AIG Specialty Insurance Company ("ASIC"). SHAF-LAND has been advised that Defendant, Sunbelt Chemicals Corp. ("Sunbelt"), is, for all practical purposes, insolvent, and has effectively decided to cease its participation in this litigation. As such, it has fallen to SHAF-LAND to oppose ASIC's motions and establish insurance coverage for SHAF-LAND's claims. ASIC's motions request that this Court grant summary judgment in its favor, finding (1) no coverage exists under the ASIC Policies for SHAF-LAND's claims, and (2) Wells Fargo Insurance Services, Inc. ("Wells Fargo") did not have authority to accept notice of claims on behalf of ASIC. For the reasons discussed below, summary judgment on these issues is inappropriate. Whether coverage exists under the ASIC Policies for SHAF-LAND's claim and whether Wells Fargo possessed the requisite authority to accept notice of claims on behalf of ASIC are both issues that remain unquestionably in dispute and the subject of ongoing discovery.

I.    **ASIC fails to meet the summary judgment standard**

Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[1] A party seeking summary judgment bears the initial responsibility of informing the court of the basis for

---

[1] Fed. R. Civ. P. 56(a).

1

its motion and identifying the evidence it believes demonstrates the "absence of a genuine issue of material fact."[2]  "In adjudicating a motion for summary judgment, the Court must view all facts in the light most favorable to the non-movant[,]" and "[t]he function of the court, therefore, is to make the threshold inquiry of determining whether there is a need for a trial."[3]

"Once the movant makes this showing, the non-movant must demonstrate that there is evidence in the record establishing that there is a genuine issue of material fact for trial."[4] "Summary judgment declaring a lack of coverage under an insurance policy is not proper unless there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded."[5]  For the reasons discussed below, summary judgment in favor of ASIC is improper.

## II. ASIC received notice of SHAF-LAND's claim within the extended reporting period

ASIC's argument that it was not timely notified of the claim under the "claims made" coverage provided by D-1-a, assumes that Policy No. EG 4068312, effective May 1, 2014 to May 1, 2015 (the "First Policy"),[6] and a renewal policy, also numbered Policy No. EG 4068312, effective May 1, 2015 to May 1, 2016 (the "Second Policy")[7] (collectively referred to as "the ASIC Policies"), provide completely separate coverage events with respect to the Property.  This is simply not true, and ASIC's arguments gloss over a few very important facts.  Significantly, while Sunbelt continued its chemical packaging operations at its Florida location, it vacated its Louisiana location (the Property at issue in this litigation) on or before April 1, 2015.  As is made clear by

---

[2] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
[3] LeBlanc v. Wyeth, Inc., 495 F. Supp. 2d 609, 612–13 (W.D. La. 2007).
[4] *Id.* at 613.
[5] Francioni v. Hartford Casualty Insurance Company, No. 15-528, slip op. at 3 (M.D. La. 2017).
[6] R.Doc. 17-8.
[7] R.Doc. 17-7.

2

the correspondence between Wells Fargo and Sunbelt and the deposition testimony of the 30(b)(6) representative of Wells Fargo, Heather Engel, when Sunbelt was discussing the renewal of its policy with ASIC for what would be the May 1, 2015-May 1, 2016 term (the Second Policy), it was not seeking coverage with respect to its ongoing operations at its Louisiana location, but, rather, an extended reporting period with respect to that Property for the claims made coverage provided by D-1-a.

As Sunbelt has pointed out repeatedly, Coverage Part D-1-a contained in the First Policy provides coverage for clean-up costs provided that:

> … provided the claim for… **clean-up costs is first made against the insured and reported to us in writing during the policy period or any extended reporting period if applicable.**[8]

Based on the clear wording of this provision, and particularly the disjunctive "or," coverage is triggered by several "claims made and reported scenarios":

1) A claim that is made and reported entirely within the policy period;

2) A claim that is made and reported entirely within the extended reporting period;

3) A claim that is made during the policy period and reported within the extended reporting period.

On June 27, 2015, Heather Engel of Wells Fargo directed an e-mail to Tim Capp with the subject line "RE: Sunbelt Chemicals Corp. – Extended Reporting Period."[9]  In that e-mail she advises Mr. Capp that there will be an additional premium payment required with respect to the extended reporting period for the "Storage Tank."  She also advised the following with respect to Sunbelt's GL/Pollution policy with ASIC:

> Separately, and in good news, we were able to negotiate with AIG to include this Extended Reporting Period coverage free of charge

---

[8] R.Doc. 17-8 at ASIC POL 0000017 (as amended by End. 7 at ASIC POL 0000067) (emphasis added).
[9] *See*, Exhibit 13 to Deposition of Heather Engel, Sunbelt 000003, attached hereto as Exhibit "1."

3

>    for 3 years on the GL/Pollution policy, so that premium has been
>    waived and you will not receive an invoice on.[10]

During the 30(b)(6) deposition of Well Fargo, Ms. Engel confirmed that Sunbelt negotiated with ASIC an "extended reporting period" in connection with the Property in Louisiana. After quoting the language from Coverage Part D-1-a contained in the May 1, 2014 to May 1, 2015 policy quoted hereinabove, the following exchange between counsel for ASIC and Ms. Engel took place:

>    A: So for the extended reporting period - - the reporting period, in this case, was purchased.
>    Q: Okay. Well, let's - -
>    A: But that came later.
>    Q: Okay. We're on the 2014-2015 - -
>    A: Oh, okay.
>    Q: - - policy, correct?
>    A: Yeah.
>    Q: Okay. Do you want to amend your statement?...
>    Q: Was there an extended reporting period purchased for the 2014-'15 policy?... As of the end of the expiration of the policy, May 1, 2015.
>    A: I don't remember what date it was purchased or which policy term is was - - I want to say it might have been '15-'16 that - - no, no. I'm sorry. I believe it was for this, but I'm not sure as of when it was purchased. It was after the policy expired - - no. It was after they vacated the premises in Louisiana.[11]

Based on the testimony and e-mail of Ms. Engel, Sunbelt negotiated an extended reporting period of three (3) years from the date that it vacated the Louisiana location. As it is undisputed that ASIC received notice of this claim when it was served with Plaintiff's petition on August 4, 2015, coverage under D-1-a of the First Policy would be triggered, as the claim was "**first made against the insured and reported to [ASIC] in writing during the policy period or any extended reporting period if applicable.**"

---

[10] *Id.*
[11] *See,* Deposition of Heather Engel, pgs. 70-71, attached hereto as Exhibit "2." *See also*, Deposition of Heather Engel, pgs. 124-125, pgs. 177-181, pgs. 192-196., attached hereto as Exhibit "2."

4

### A. The fact that the extended reporting period endorsement was issued in conjunction with the Second Policy, or was not issued at all, does not preclude coverage.

As is foreshadowed by counsel for ASIC's questions in both the above excerpt and in other portions of Ms. Engel's deposition, ASIC will argue that, because the endorsement referenced in Ms. Engel's June 27, 2015 e-mail and in her deposition testimony was issued in connection with the Second Policy, there is no coverage. For example, during questioning by counsel for ASIC, Ms. Engel states that the extended reporting period coverage that she referenced earlier in her deposition and which was negotiated between Sunbelt and ASIC was contained in Endorsement 11 attached to the Second Policy.[12] Indeed, ASIC essentially makes this very argument in its brief. The problem, as stated above, is that ASIC simply glosses over and chooses to ignore the fact that the endorsement providing coverage on the Louisiana location (i.e. the Property) that is attached to the Second Policy is, or at least should have been, an extended reporting period endorsement.

Whether or not the extended reporting period endorsement referenced by Ms. Engel was issued in connection with the First Policy or not is a red herring, as ASIC's own policy language contemplates that an extended reporting period is, by definition, negotiated on the back end of the applicable coverage period. Section V of the First Policy entitled "Extended Reporting Period – Coverage D" provides that the "insured is entitled to purchase an optional extended reporting period **upon termination of coverage** as defined herein…," in which case the insurer shall "issue an endorsement providing an optional extended reporting period of up to forty (40) months from termination of coverage hereunder for all insured properties and non-owned locations, if applicable, or any specific insured property or non-owned location…"[13] According to the policy,

---

[12] *See*, Deposition of Heather Engel, pgs. 195-196, attached hereto as Exhibit "2."
[13] R.Doc. 17-8 at ASIC POL 0000039-40.

termination of coverage occurs "at the time of cancellation or nonrenewal of this Policy by you or us, or **at the time of our deletion of a location which previously was an insured property**…"[14] As established by the deposition of Ms. Engel and by Endorsement No. 11 attached to the Second Policy, Sunbelt vacated its Louisiana location (i.e. the Property) as of April 1, 2015. Furthermore, a review of Endorsement No. 12 attached to the First Policy[15] and Endorsement No. 6 attached to the Second Policy[16] clearly indicates that the Louisiana location (i.e. the Property) is deleted from coverage upon the expiration of the First Policy. The only coverage provided with respect to the Louisiana location (i.e. the Property) in the Second Policy is in connection with the extended reporting period endorsement, which Ms. Engel identifies as Endorsement No. 11.

Accordingly, ASIC's own policy establishes that the insured's right to negotiate and purchase an extended reporting period does not come into existence with respect to a particular location until that location is deleted from coverage. This necessarily means that an extended reporting period endorsement will never and can never be issued on the front end of a policy period. By definition, it is not issued until the expiration of coverage for a particular location, which in this case virtually coincides with the end of the May 1, 2014 to May 1, 2015 policy period. As Ms. Engel's testimony and e-mail establish, Sunbelt negotiated and was granted an extended reporting period of three (3) years from the date that it vacated the Louisiana Property. The fact that ASIC chose to unilaterally issue this endorsement in connection with the Second Policy should not preclude coverage.

Here, it should also be pointed out that there is admittedly no endorsement attached to the Second Policy that comports with the language quoted in Ms. Engel's June 27, 2015 e-mail or her

---

[14] *Id.*
[15] R.Doc. 17-8 at ASIC POL 0000084.
[16] R.Doc. 17-7 at ASIC POL 0000154.

6

deposition testimony. In other words, there is no endorsement attached to that policy which states that Sunbelt has been granted an extended reporting period of three (3) years from the date that they vacated the Louisiana Property and/or the date that coverage was deleted at the expiration of the First Policy. The only endorsement that references the Louisiana location in the Second Policy (Endorsement No. 11) appears to state that it provides coverage under Coverage Part D-1-a with respect to the Louisiana location, presumably for the policy period of May 1, 2015 to May 1, 2016.[17] However, assuming Endorsement No. 11 is in fact the "extended reporting period endorsement" that was bargained for between Sunbelt and ASIC, which heretofore has not been refuted by ASIC, it cannot be read in a vacuum and must be read in conjunction with the language contained Coverage Part D-1-a that is contained in the First Policy, which is the last policy that was issued before coverage was deleted for the Louisiana location. As explained above, that language provides coverage for a claim first made and reported during the policy period or any applicable extended reporting period. Assuming that Endorsement No. 11 granted Sunbelt an "extended reporting period," as testified to by Ms. Engel, coverage would have been triggered when ASIC was served with Plaintiff's lawsuit on August 4, 2015.

At the very least, the testimony of Heather Engel creates an issue of fact with respect to the coverage provided by the ASIC Policies and, in particular, the extended reporting period. For example, there is no endorsement that is identified as an "extended reporting period endorsement" and there has been no endorsement produced by any party that grants a three (3) year "extended reporting period." Considering that the language contained in the only endorsement that references the Louisiana location after that location was deleted from coverage appears to be a completely

---

[17] R.Doc. 17-7 at ASIC POL 0000171-172.

7

different animal from that which Ms. Engel believes she negotiated on behalf of Sunbelt, all of the following assumptions are reasonable and, at the very least, constitute issues of fact:

1) ASIC never issued the endorsement for which Sunbelt bargained;

2) ASIC has not produced a copy of the relevant endorsement;

3) ASIC mistakenly issued the wrong endorsement; or

4) Endorsement 11 is ASIC's Extended Reporting Period Endorsement, which when read in conjunction with the language of Coverage Part D-1-a that is contained in the First Policy, would result in coverage.

In any event, summary judgment is improper with respect to these issues.

### III. Whether Wells Fargo received notice of the claim and served as ASIC's agent are both disputed and the subjects of ongoing discovery

ASIC alleges that the undisputed facts show that Wells Fargo did not receive timely notice of the claim and that Wells Fargo was not ASIC's agent and did not have authority to accept notice of claims on ASIC's behalf, but these issues are still very much in dispute. These very issues—issues at the center of the coverage dispute between Sunbelt and ASIC—were the subject of a Motion to Compel filed on behalf of Sunbelt.[18] Because of the overlap in relevance, SHAF-LAND hereby adopts by reference Sunbelt's Memorandum in Support of Motion to Compel (R.Doc. 44-1), Reply Memorandum in Support of Motion to Compel (R.Doc. 51-2), Supplemental Memorandum in Support of Motion to Compel (R.Doc. 65-1), and Memorandum in Opposition to Motion for Partial Review of Magistrate Judge's Ruling on Motion to Compel (R.Doc. 77) as if copied here *in extenso*.

In Sunbelt's 30(b)(6) deposition, Tim Capp testified that he personally notified Wells

---

[18] R.Doc. 44.

8

Fargo (through Matt Puckett) of the claim in May 2015.[19] Additionally, SHAF-LAND sent written notice of the claim to Wells Fargo through Louisiana's Commissioner of Insurance on May 5, 2015.[20] Both notices fell within the time period for reporting claims under the ASIC Policies.[21] Mr. Capp testified that when he first spoke to Well Fargo's Matt Puckett in May 2015, he did not think "anything further needed to be done to put [Sunbelt's] insurers on notice" of the claim.[22] That was because, at that time, Mr. Capp was "under the impression that Wells Fargo was a representative of the insurance company."[23] It is what Mr. Capp thought when he spoke to Mr. Puckett (not what he thought at the time of his deposition, in November 2016, after ASIC had already taken the position that Sunbelt providing notice to Wells Fargo was ineffective)[24] that is relevant here. Magistrate Judge Wilder-Doomes agreed that there "is clearly a factual dispute in this case regarding whether Wells Fargo received notice of Shaf-Land's claims against Sunbelt before this suit was filed."[25]

Additionally, whether Wells Fargo served as agent for ASIC for receipt of claim is also disputed. That agency can be established in at least three ways: (1) ASIC could have specifically designated Wells Fargo as its agent for that purpose,[26] (2) the granting of authority could be implied,[27] or (3) Wells Fargo could be vested with apparent authority to receive notice on behalf of ASIC—i.e., ASIC manifested Wells Fargo's authority to receive notice of claims and Sunbelt

---

[19] R.Doc. 91-2 at 33.
[20] R.Doc. 23-4.
[21] R.Doc. 17-8 at ASIC POL 0000039-40.
[22] R.Doc. 65-2 at pg. 3.
[23] R.Doc. 65-2 at pgs. 3-4.
[24] R.Doc. 65-2 at pg. 4.
[25] R.Doc. 69 at pg. 17, fn. 86.
[26] Good v. Fisk, 524 So.2d 203, 205 (La. App. 4 Cir. 1988) (*citing* Martin Fuel Dist. v. Trans Gulf Fuel, Inc., 496 So.2d 473, 476 (La. App. 1 Cir. 1986)).
[27] "Agency may be established through proof of a course of business or through proof that the board of directors knew of, or acquiesced in, the agent's authority and actions." Butts v. Aetna Cas. & Sur. Co., 136 F.3d 1328 (5th Cir. 1998) (unpublished) (*citing* Karam v. Travelers Ins. Co., 813 F.2d 751, 754 (5th Cir. 1987), which quotes 2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 444, at 346 (rev. perm. ed. 1982)).

reasonably relied on that manifestation.[28] "It is a well settled rule that a court can find that the legal relationship of principal-agent exists, so as to bind the insurer, despite the failure of the person acting for the insurer to have been specifically licensed as its agent."[29] As such, "a broker may be found under the facts to have been an agent of the insurer for the purpose involved."[30] The evidence supports such a finding here. Wells Fargo was the "face" of the insurance industry for Sunbelt, as Sunbelt was not allowed to interact with ASIC directly when coverage was placed.[31] Wells Fargo sold Sunbelt only AIG-group policies for seven years.[32] Wells Fargo was compensated by ASIC directly.[33] And in numerous instances, Sunbelt reported claims to Wells Fargo that ASIC ultimately covered.[34]

While ASIC contends that neither it nor Wells Fargo received written notice of the claim as required by the ASIC Policies until being served with SHAF-LAND's petition on August 4, 2015, and that this notice was untimely—which is denied—Louisiana courts addressing similar factual situations and similar relationships between insurers and brokers/producers have looked beyond policy language requiring written notice and found notice to be proper when made orally to the insurer's agent.[35] In *Spurrell v. Ivey*, over argument by the insurer, the court set aside the policy language requiring written notice, having found that the policy language at issue was not always strictly enforced—in part because the broker regularly accepted oral notice and subsequently processed claims in a manner sufficient to bind the insurer.[36] In *Spurrell*, despite the

---

[28] *See,* Spurrell v. Ivey, Nos. 25359-CA, 25360-CA (La. App. 2 Cir. 1/25/94), 630 So.2d 1378, 1385-87.
[29] Tassin v. Golden Rule Insurance Company, No. 94 CA 0362 (La. App. 1 Cir. 12/22/94), 649 So.2d 1050, 1054.
[30] *Id. See also,* State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of Louisiana, No. 2010 CA 0689 (La. App. 1 Cir. 2/11/11), 56 So. 3d 1236, 1243-44 ("Whether a broker in any particular transaction acts as the agent of the insurer or insured is a question of fact dependent on the particular circumstances of the case.").
[31] Wells Fargo 30(b)(6) Deposition, attached as Exhibit A, pg. 67.
[32] *Id.* at pgs. 94-96.
[33] *Id.* at pgs. 135-137.
[34] *Id.* at pgs. 140-150.
[35] *See*, Spurrell v. Ivey, Nos. 25359-CA, 25360-CA (La. App. 2 Cir. 1/25/94), 630 So.2d 1378, 1385-87.
[36] *Id.*

10

lack of a formal principal-agent relationship, the court held oral notice to the broker was sufficient to bind the insurer.[37] "[L]icensure or the parties' perceptions are not dispositive factors in determining the true legal relationships in a given transaction."[38]

Clearly these issues are relevant to this litigation and remain in dispute. Magistrate Judge Wilder-Doomes granted in part Sunbelt's motion to compel,[39] and the parties are currently awaiting a determination by the Court on ASIC's Motion for Partial Review of Magistrate's Ruling on Sunbelt's Motion to Compel.[40] In part, Magistrate Judge Wilder-Doomes' ruling granted Sunbelt additional discovery on the following issues: (1) supplemental responses regarding information on how ASIC receives notice of claims made by other insureds under similar policies, and (2) supplemental responses regarding the relationship between Wells Fargo and ASIC.[41] The ruling also granted Sunbelt thirty (30) days to seek additional information and documents from ASIC after ASIC provides the required supplemental responses.[42] As is clear by the ruling and order on Sunbelt's Motion to Compel, the issues which make up ASIC's Alternative Motion for Partial Summary Judgment—issues Magistrate Judge Wilder Doomes found "at the heart of this litigation"[43] and "at the center of the dispute between Sunbelt and ASIC"[44]—are still very much in dispute, despite ASIC's desire to label them undisputed. As such, there are very clearly genuine issues of material fact regarding Wells Fargo's notice and authority, and summary judgment on these issues is inappropriate.

---

[37] *Id.*
[38] *Id.* at 1387.
[39] R.Doc. 69.
[40] *See*, R.Doc. 72, R.Doc. 77, and R.Doc. 89.
[41] R.Doc. 69 at 21-22.
[42] R.Doc. 69 at 23.
[43] R.Doc. 69 at 17.
[44] R.Doc. 69 at 19.

### IV.     Conclusion

As set forth herein, SHAF-LAND has established there is at least a genuine issue of material fact as to the issues at the heart of ASIC's motion for summary judgment and alternative motion for summary judgment.  The questions of Wells Fargo's timely receipt of notice of the claim and its authority to accept notice of claims on ASIC's behalf both remain open and very much in dispute.  Until this Court rules on ASIC's Motion for Partial Review of Magistrate's Ruling on Sunbelt's Motion to Compel, and, pending that ruling, Sunbelt is able to review ASIC's compelled supplemental responses, summary judgment in favor of ASIC on those issues is improper.  Furthermore, under the appropriate, bargained for Extended Reporting Period, ASIC received timely written notice of the claims by SHAF-LAND, such that the Coverage D-1-a of the ASIC Policies provides coverage.  Accordingly, SHAF-LAND, L.L.C. prays that AIG Specialty Insurance Company's Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment Regarding Wells Fargo's Lack of Authority be denied.

Respectfully submitted,

**BIENVENU, BONNECAZE, FOCO, VIATOR & HOLINGA, APLLC**

By  **s/Phillip E. Foco**

Phillip E. Foco, #25670
Anthony J. Lascaro, #32546
Patrick H. Hunt, #34599
Colin P. O'Rourke, #37252
4210 Bluebonnet Blvd.
Baton Rouge, LA 70809
Phone: (225) 388-5600
Fax: (225) 388-5622
phillip.foco@bblawla.com
anthony.lascaro@bblawla.com
patrick.hunt@bblawla.com
colin.orourke@bblawla.com

*Attorneys for SHAF-LAND, L.L.C.*

12

**CERTIFICATE OF SERVICE**

    I certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

    Baton Rouge, Louisiana, this 15th of May, 2017.

                                                    s/Phillip E. Foco
                                                     Phillip E. Foco